GUARANTY TRUST COMPANY OF NEW YORK, as Trustee, Respondent, *v.* JEAN HARRIS et al., Respondents, and JOHN W. HARRIS et al., Infants, by JOHN F. KEATING, Their Guardian ad Litem, Appellants.

(Argued February 27, 1935; decided April 16, 1935.)

*John F. Keating,* as guardian *ad litem,* for appellants.

*Harrison Tweed* and *Wilber Stammler* for Milbank, Tweed, Hope & Webb, *amici curiæ.*

*Mitchell Jelline* and *Max D. Steuer* for defendants, respondents.

CRANE, Ch. J.  By indenture dated July 25, 1929, defendant Jean Harris (formerly Jean Ferris) created a trust of certain property therein described with The Guaranty Executor and Trustee Company, Ltd., as trustee.  At the time of the creation of the trust, Jean

Harris was an unmarried infant residing at Grosvenor House, Park Lane, in the city of Westminster, London, England. The trust was in contemplation of the marriage of Jean Harris to the defendant Irving Drought Harris, and provided that if such marriage should not be solemnized within twelve months from the date thereof, the indenture should be void. The Guaranty Trust Company of New York, the plaintiff herein, has become substituted trustee by a deed of variation, dated July 27, 1931. In said indenture it is provided that the trustee shall pay the income of the trust fund to the settlor during her life, and after her death shall hold the capital and income of the trust fund in trust for the child or children or remoter issue of the settlor upon such terms and conditions as the settlor shall by deed or will appoint, except as to a certain portion of such trust fund which settlor might, upon certain terms and conditions, appoint by a will for the benefit of her husband, the defendant Irving Drought Harris, and other undesignated persons; and in default of any such appointment, that the trustee shall hold said trust fund in trust for the child or children of the settlor and the survivors or survivor of them, in equal shares to be paid over to him or her when he or she shall attain the age of twenty-one years, or she shall attain that age or marry, and to apply the income meanwhile in the discretion of the trustee for the maintenance and education of such child or children, with other and further provisions for the payment or application by the trustee of part of the corpus of the trust fund for the benefit of such child or children.

On or about December 8, 1933, the defendant Jean Harris filed with the plaintiff an instrument in writing executed by her on November 27, 1933, purporting to exercise the power of appointment reserved to her by said trust indenture, dated July 25, 1929, as amended by the deed of variation. This instrument of appointment reads as follows:

" 1. I hereby exercise such power subject to the provisions hereof as follows:

"After my death, my trustee, the said Guaranty Trust Company, shall stand possessed of the entire capital and income of the trust fund referred to in the aforesaid instruments for the benefit of my grandchildren living at my death and for no other persons whatsoever, at which time my trustee shall convert the securities in the said trust fund into cash and shall thereupon forthwith pay over the proceeds thereof to my said grandchildren in equal shares.

" 2. This instrument and the appointment hereunder shall be and is hereby declared to be revocable in whole or in part by me by any instrument in writing brought to the notice of the said trustee.

" 3. This instrument shall be deemed part of said trust Settlement and shall be governed by the laws of the State of New York."

Without a doubt Jean Harris exercised this power of appointment for the very purpose of destroying it; in other words, it died at birth. By this means it was sought to do indirectly what could not be done directly, that is, revoke the trust. Having exercised the power of appointment in favor of one not in being, it was thought possible to revoke the trust without requiring consent, as required by section 23 of the Personal Property Law (Cons. Laws, ch. 41). With this in mind, a few weeks later the defendant, through her attorney, delivered to the trustee an instrument dated January 2, 1934, wherein she attempted to revoke the trust without giving notice to, or obtaining the consents of, anybody interested in the principal remainder. This instrument, executed in France, read:

" To the Guaranty Trust Company of New York:

" Please take notice that I, Jean Harris, heretofore designated as ' the Settlor ' in two deeds of trust executed by me with your predecessor-trustee, the Guaranty

Executor and Trustee Company, Limited, of London, England, on July 25, 1929 and July 27, 1931, respectively, and also in certain deeds of appointment dated July 30, 1931 and November 27, 1933, respectively, now in your possession and in which you are named as trustee, hereby revoke the trust referred to in the aforesaid instruments and demand that you forthwith turn over to me the entire corpus of the said trust together with all accrued income therein.

" Dated, January 2nd, 1934.

" JEAN HARRIS [L. s.]
" JEAN F. HARRIS "

The property, the subject of this trust, is personal property within the State of New York. The children of Mrs. Harris, who are persons interested as remaindermen, are two, John Wakefield Harris and Elizabeth Harris, one two and a half years old and the other a year younger, both living with their parents at Chateau de Doumy, Doumy, B. P., France.

The sole question presented here is whether, under this indenture of trust, these two living children have an interest, even though it be contingent, which prevents their mother from revoking this trust. The courts below have held that by exercising the power of appointment and designating grandchildren, who could not possibly come into being for many years, the settlor had discovered a way of destroying the contingent interests of her children. The Appellate Division so held, by a divided court, certifying, however, to us the following questions:

" 1. At the moment of the attempted revocation of the trust by the Settlor were the two children of the Settlor beneficially interested in the trust within the meaning of Section 23 of the Personal Property Law so as to require their consents to a revocation thereof?

" 2. At the moment of the attempted revocation of this trust by the Settlor were the unborn grandchildren

designated as contingent remaindermen in the deed of appointment beneficially interested in the trust within the meaning of Section 23 of the Personal Property Law so as to require the consent of some person representing them and acting in their behalf to a revocation thereof?

" 3. Was the trust validly revoked by the sole act and consent of the Settlor? "

The Personal Property Law, section 23, provides as follows:

" Upon the written consent of all the persons beneficially interested in a trust in personal property or any part thereof heretofore or hereafter created, the creator of such trust may revoke the same as to the whole or such part thereof, and thereupon the estate of the trustee shall cease in the whole or such part thereof."

What was this trust which the creator has tried to revoke without notice to anybody? It is, that the trustee shall pay the income of a trust fund to the settlor during her life, and after her death shall hold the principal and income of the trust fund in trust for the child or children or remoter issue of the settlor, upon such terms and conditions as the settlor shall by deed or will appoint. In default of any such appointment the trustee is to hold said trust fund in trust for the child or children of the settlor and the survivors or survivor of them in equal shares.

It is apparent, therefore, that the two children of Mrs. Harris have a remainder in the principal of this trust fund. If she should die without making an appointment they take the principal as provided in the trust. So likewise, in case she dies having made an appointment to a child or remoter issue not in existence, then also these two children take the principal of the estate. The appointment is ineffectual; the same as if never made.

Put it as you will, these two children are beneficially interested in the trust principal because they would to-day take that principal under the trust if their mother should

die. Her power of appointment would be futile as there is no living grandchild. (*Empire Trust Co.* v. *Northcote*, 263 N. Y. 527; *Hillen* v. *Iselin*, 144 N. Y. 365–374; Gray, Rule against Perpetuities [3d ed., 1915], §§ 256, 258; *Lakin* v. *Lakin*, 34 Beav. 443; *Kuntze* v. *Guaranty Trust Co.*, 242 App. Div. 7; affd., 265 N. Y. 669; 49 Corpus Juris, p. 1303; and 22 American and English Encyclopædia of Law [2d ed.], p. 1139.)

Jean Harris, in making this trust indenture in contemplation of her marriage, completely disposed of her estate and title in the securities constituting the principal of the trust fund, at least in the event that at her death she left surviving issue. She reserved nothing to herself or to her estate, except the income to be paid to her during her life, and the power of appointment. Her children, therefore, took their contingent interest by purchase and not by descent. (*Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298; *Hussey* v. *City Bank Farmers Trust Co.*, 236 App. Div. 117; affd., without opinion, 261 N. Y. 533; *Kuntze* v. *Guaranty Trust Co., supra.*)

This case comes to us, as above stated, on certified questions. The plaintiff brought this action for an accounting, setting forth the papers which had been filed with it by Jean Harris and asking for a construction of the trust indenture. She answered, demanding judgment that she had revoked the trust. The infants answered by guardian *ad litem*, submitting their rights and interests to the protection of the court. The interlocutory judgment, entered upon the decision, held that Jean Harris had validly exercised her power of appointment as provided by the deed of trust, as amended by the deed of variation, and further decided that the beneficial interests of her infant children in the trust estate were completely and validly divested.

For the reasons stated the order of the Appellate Division and the interlocutory judgment of the Special Term should be reversed, with costs in all courts, and the

questions certified answered as follows: first question in the affirmative and the third question in the negative. The second question we leave unanswered.

LEHMAN, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur; FINCH, J., not sitting.

Ordered accordingly.