In the Matter of the Estate of THOMAS F. RYAN, Deceased.

Surrogate's Court, New York County, August 3, 1942.

*Root, Clark, Buckner & Ballantine*, for George E. Cleary and Robert G. Surridge, as executors, etc., of Clendenin J. Ryan, deceased, petitioners.

*Chadbourne, Wallace, Parke & Whiteside* [*Robert D. Shea, Irving M. Gruber* and *Matthew J. Kust* of counsel], for Clendenin J. Ryan, Jr., and others, respondents.

*Kieffer & Killea* [*William J. Killea* and *Edwin C. Hahn, Jr.*, of counsel], for Guaranty Trust Company of New York, as trustee, etc., respondent.

*Mathias F. Correa, United States Attorney* [*John B. Creegan, Asst. U. S. Attorney*, of counsel], for the United States of America, intervenor.

FOLEY, S. This is a proceeding brought by the executors of the estate of Clendenin J. Ryan, the deceased life beneficiary of two trusts created by the will of the testator here, Thomas F. Ryan, to compel the trustee of the latter's estate to pay over to them certain moneys and property.

Two questions are presented for determination by the contentions of the parties. First, the right of the trustee to retain out of income which had accrued at the date of the life tenant's death, the sum of $26,109.98 to satisfy a claim against the estate of the deceased life beneficiary under a lease of certain real property of which the life beneficiary was the tenant. The second dispute arises over the title to certain stock dividends of the Standard Oil Company of New Jersey and, specifically, whether such dividends were ordinary stock dividends paid out of profits and as such income, or whether they were extraordinary dividends and allocable to corpus under the provisions of section 17-a of the Personal Property Law.

At the time of his death, on August 21, 1939, Clendenin J. Ryan, the son of this decedent, was the beneficiary of two trusts of the residuary estate under his father's will. The first trust, identified for convenience as the " large trust " established in subparagraph A of paragraph 1 of article fourth of the will, provided that on the death of the life beneficiary the remainder was to be continued in trust for his issue with directions to pay the principal of their respective shares to said issue upon attaining the age of thirty years. The second trust referred to as the " small trust " established in subparagraph F of paragraph 1 of article fourth of the will gave the son a secondary life estate with remainder on his death outright to his issue him surviving in equal shares. Both trusts terminated on the death of Clendenin J. Ryan on August 21, 1939.

The first question involves only the large trust. The Guaranty Trust Company, as the sole remaining trustee, now holds and is retaining $69,088.39, which represents income which had accrued to the date of the death of Clendenin J. Ryan, the life beneficiary. Out of this sum it has set up a reserve of $42,978.41 to cover possible liability asserted by the Treasury Department of the United States for certain income taxes, interest and penalties. The petitioning executors have acquiesced in the retention of this reserve.

The balance of the retained trust income amounting to $26,109.99 is held by the trustee under an asserted right of set-off and equitable lien by reason of the obligation of Clendenin J. Ryan under a written lease of the property 32 East 70th Street, New York city. The life beneficiary was also a co-trustee. At his request

the two trustees purchased this real property in 1931 as an asset of the estate. The terms of the will specifically authorized such an investment. The property was acquired as a residence for Mr. Ryan. By a written instrument, dated April 6, 1931, the trustees leased these premises to Mr. Ryan individually. The lease, as thereafter modified and extended, expired on April 5, 1941, nearly two years subsequent to the death of Mr. Ryan. Under the terms of the lease the tenant agreed to pay an annual rental of $10,329.40, plus all taxes and carrying charges. The question of the amount of rent which might be required to be paid during the beneficiary's lifetime as a practical matter, was academic since he, as life tenant of the trust, would have been entitled to any net income derived from the property. Consequently, by a modifying agreement, dated April 1, 1933, the rent was reduced to a nominal sum of ten dollars annually until the end of the term provided in the agreement or until the death of Mr. Ryan, the tenant, whichever event occurred earlier. That agreement specifically provided, however, that "in the event of the tenant's death before the expiration of the term provided in said agreement of lease then and in that event the annual rental of $10,329.40 or that portion of the sum accruing after the death of the tenant shall be reinstated and become and continue an obligation of the estate of the tenant." The modifying agreement further provided that in the event the tenant failed to pay the rent and carrying charges when due, the amount thereof could be charged by the trustees out of the income of the trust otherwise payable to the tenant as life beneficiary.

At the time of his death on August 21, 1939, the tenant was not in default under the lease. The rent due under the lease subsequent to the death of Mr. Ryan and the carrying charges of the property have not been paid. The total amount of the indebtedness is $26,109.98, of which $16,771.44 represents rent which accrued and $9,338.54 represents expenditures for taxes and other charges actually paid by the trustee out of the trust funds.

The surrogate holds that this indebtedness constitutes a proper set-off against the income which has accrued for the life beneficiary. Upon this phase of the proceeding all of the contentions of the executors of Mr. Ryan's estate are overruled. These contentions of the executors may be summarized as follows: (1) That there are no mutual cross-claims involved; (2) that the obligation on the basis of which the right of set-off is asserted had not matured at the death of Clendenin J. Ryan; (3) that the lease as modified and amended does not authorize the retention of income as claimed; (4) that the repudiation of the lease by these petitioners furnishes

no basis for a claim of equitable set-off; (5) that to allow the set-off would be to give an improper preference over preferred creditors of the estate of the deceased life beneficiary.

The first of these contentions rests upon a highly technical argument to the effect that the remaining corporate trustee's functions had ceased at the death of the life tenant; that under the terms of the will the remainders vested outright at that time in two of the children of Mr. Ryan who had attained the age of thirty years; that the functions of the trustee as to those shares constituting one-half of the remainder had been changed into those of an agent for the vested remaindermen. The trustee continued to act for the other remaindermen until they attained the age of thirty years, which events occurred before the initiation of the present proceeding. These contentions have no basis in the law of trusts. Even after the termination of the trust period by death or other occurrence, there still remains the duty of accounting and distribution. (*Matter of Miller,* 257 N. Y. 349; *Matter of Thomas,* 254 id. 292; *Matter of Lathers,* 137 Misc. 226.) In the ordinary case where division between the remaindermen is necessary, the assets are sold and distribution is made in cash. In the smaller number of cases the remaindermen elect to take the property in kind by formally executed instruments. The situation here is not like that in an estate where the testator has devised real property owned by him at death to his trustee, with a gift over to designated remaindermen at the expiration of the trust period. In such cases the remaindermen take directly as devisees. Here, the real estate was acquired during the administration of the trust. I accordingly hold that the trustee continues to function until formally discharged by a proper decree of this court in the accounting proceeding or by supplemental decree directing the disposition of the reserve held for Federal income taxes of the life beneficiary. The obligation of the life beneficiary under the lease was directly connected with the administration of the trust. Mutuality of cross-claims as between the trustee and the estate of the life beneficiary therefore existed and still exists. It is a well established principle of equity that if a beneficiary is under liability to the trustee as such, his interest in the trust estate is subject to a charge for the amount of his liability. (Restatement, Law of Trusts, § 251; Scott on Trusts, §§ 251, 252, 255.1.) " If one of the beneficiaries of a trust contracts to pay money to the trustee to be held as part of the trust estate and he fails to make the payment, his beneficial interest is subject to a charge for the amount of his liability." (Restatement, Law of Trusts, § 252.) The contention of the executors that these rules are confined to cases of embezzlement by a fiduciary

who has an interest in the estate is overruled. Equity adopts a broader policy for recouping losses sustained by the estate or enforcing the set-off of moneys due on any form of legal or equitable obligation from the beneficiary to the estate. (Scott on Trusts, §§ 251, 255.1; *Matter of Grifenhagen*, 174 Misc. 559; *Matter of King*, Id. 937; *Matter of Cramer*, 166 id. 713; *Matter of Burr*, 143 id. 877; affd., 239 App. Div. 774; *Matter of Bradley*, 122 Misc. 184; *Matter of Flint*, 120 id. 230; affd., 206 App. Div. 778.) A person entitled to participate in a fund and under obligation to make contribution to the same fund cannot receive his portion thereof without first discharging his obligation. This well established principle is an application of the equitable maxim that he who seeks equity must do equity. (Scott on Trusts, § 251.)

In *Clark* v. *Clark* (123 Kan. 646; 256 P. 1012) the trustee pursuant to the directions of the income beneficiary of the trust paid all of the income to a third party. Having no income on hand the trustee thereafter paid taxes on the property out of his own funds. On the appointment of a new trustee, the former trustee claimed reimbursement out of the income subsequently accruing. The beneficiary of the trust objected to reimbursement on the ground that he should have retained sufficient income to pay the taxes. Although there was in existence a statute prohibiting the alienation by the life beneficiary of his income, the court nevertheless held that the trustee was entitled to reimbursement out of the income which accrued in the trust subsequent to the payment of the taxes.

In the pending proceeding the surrogate overrules the contention that the provisions in the modifying agreement by which the life beneficiary subjected his income to the charges due under the lease, accruing either before or after his death, constitutes a void assignment of income as in violation of section 15 of the Personal Property Law. The life beneficiary received full and complete benefits during his lifetime by the purchase of the elaborate residence for his use. The agreement must be treated in its entirety. The assignment was gratuitous and unnecessary and only confirmed the life beneficiary's obligation, whether in law or equity, to pay his just debt to the estate. We are dealing here with an accrued fund representing unpaid income at the time of death of the life tenant. The set-off of the debt may validly be enforced against that fund now in the hands of the remaining trustee. The subjection of the beneficiary's income to his obligations under the lease is not a void assignment.

The second contention that the obligation had not matured at the death of Mr. Ryan is likewise groundless. The basis of the

indebtedness arose in his lifetime and was created by his written agreements. He is held to a higher responsibility because of the fact that he was a co-trustee at the time of signing the agreement. It is immaterial whether the money became due before or after his death. One might visualize many situations, such as a promissory note given by a beneficiary payable to the trust estate (if the will so permits) where the due date of payment may have been after the beneficiary's death. Nevertheless the debt constitutes a proper set-off against the beneficiary's interest in the estate.

The third contention that the lease as modified did not authorize the retention of income as claimed is answered by the exact terms of the instrument itself.

The fourth contention that the repudiation of the lease by the executors furnished no basis for a claim of equitable set-off is similarly groundless. Such repudiation is merely gratuitous and without any basis of a legal ground for setting aside a valid contract. Under its terms the obligations of the decedent and of his estate were fixed and not subject to change.

The final and fifth contention of the executors that to allow the set-off would be to give an improper preference over preferred creditors is equally untenable. The equities rest with the trust estate here and if the executors' claim was sustained inequity would result to it.

I have stated previously in this decision that the trust estate has actually expended $9,338.54 out of its funds for the payment of taxes and other charges on the real estate in question. In addition it has funds in the form of accrued income which should be applied to the unpaid rent. The whole doctrine of set-off might be nullified in every form of cases of mutual claims if the creditor was compelled to pay over moneys or property in his possession to the debtor with the necessity for asserting his own claim in the liquidation of the debtor's estate. That situation is particularly emphasized here because the estate of the debtor, Mr. Ryan, is hopelessly insolvent and the funds are barely sufficient to meet funeral expenses, administration expenses and certain preferred claims.

While the United States Government as a preferred creditor of the estate of Clendenin J. Ryan has been permitted to intervene and join in the relief prayed for by the executors, there is no merit in its contention that it has a claim to the assets superior to that of the trustee. The right of the estate is paramount to that of the government. It has no greater right in respect of trust assets than the petitioning executors. ( *United States* v. *Sullivan*, 19 F. Supp. 695; affd., no opinion, 95 F. [2d] 1021; *United States* v.

*Bank of Shelby*, 68 id. 538; *United States* v. *Bank of United States*, 5 F. Supp. 942; *Karno-Smith Co.* v. *Maloney*, 112 F. [2d] 690.)

In conclusion upon this question I accordingly hold the application of the executors to compel payment in the sum of $26,109.98 must be denied. The trustee is entitled to apply that amount as a set-off and in satisfaction of the obligations of the life beneficiary and of his estate which accrued under the lease of the real property.

The second question involves the allocation of stock dividends. It is undisputed that these dividends were paid out of the corporate earnings derived during the period of the trust. The distinction between ordinary stock dividends and extraordinary stock dividends and their allocation to income or principal under section 17-a of the Personal Property Law, was carefully and thoroughly analyzed by Surrogate SLATER in *Matter of Villard* (147 Misc. 472). I am in complete accord with his statement of the history and purpose of that section and the conclusion reached by him that ordinary stock dividends derived from corporate earnings are strictly income and become payable to the life tenant. Determination is therefore made that these stock dividends constituted income and became the property of the life tenant.

Submit order on notice accordingly.