Per Curiam.

The extensive factual and legal background of this litigation, unique and not likely to recur, is sufficiently set forth in the Referee’s reports and Special Term’s decision and opinion and need not here be repeated.
• The documents in question should be construed to carry out the settlor’s intention so far as it is legally possible to do so including her intention by exercising the reserved powers of appointment to give her husband d’Espinay an annuity of $25,000 and individual donees certain outright gifts.
Special Term correctly held inter alia that the marriage of the settlor to Charles d’Espinay was valid and the infant, Chantal, the legitimate child of such marriage; that the powers of appointment reserved to the settlor Jean Ferris d’Espinay under subdivisions (a) and (b) of article 9 of the deed of settlement as amended were validly exercised; and that the secondary trusts for *991 the benefit of the settlor’s children were invalid under the law of the State of New York which controls. The primary trust, however, for the benefit of the settlor during her life was entirely valid.
Special Term, however, erred in holding that the exercise of the power in favor of d’Espinay created a secondary trust measured by his life and that on his death the balance of principal and income in the hands of the trastee will “ revert to the estate of Jean Ferris d’Espinay ”. The decedent reserved to herself the power to appoint an annuity of $25,000 for the benefit of her husband “ upon protective trusts * * * or otherwise ”; but when she validly exercised that power in her codicil she did not direct a protective trust to be created for payment of the annuity but simply appointed “ to ” the husband during his life “ an annuity of $25,000 * * She reserved the right to appoint an annuity in trust but she elected to do otherwise. If the order appealed from is affirmed in these respects, the children, primary objects of the settlor’s bounty, will realize little or nothing from the fund for many years.
We are bound by the decision of the Court of Appeals in the prior appeal (Guaranty Trust Co. v. Harris, 267 N. Y. 1) insofar as it determined that the settlor’s children had valid remainders in the trust. The court there held: (1) that the trust was not revocable under section 23 of the Personal Property Law, since the settlor’s children “have a remainder in the principal of this trust fund”, and (2) that the settlor “completely disposed of her estate and title in the securities constituting the principal of the trust fund at least in the event that at her death she left surviving issue. She reserved nothing to herself or her estate, except the income to be paid to her during her life, and the power of appointment. Her children, therefore, took their contingent interest by purchase and not by descent.” (Pp. 7, 8; emphasis ours.)
Accordingly, Special Term’s ruling on the issue of res judicata under the prior decision was correct in refusing to dismiss the ancillary executor’s counterclaims insofar as they allege the secondary trusts for the children void under the law of the State of New York; but it was in error in not dismissing that part of the counterclaims which further alleged that the remainder purported to be created are void and that the fund “reverts to the estate of the settlor and constitutes part of said estate.” To the contention that there is no such thing as a remainder of a void trust, the answer is that in this case a distinction .must be made between the valid primary trust for the life of the settlor alleged in the counterclaims in question and the invalid secondary trusts for the children also alleged therein. On the prior appeal the court was required to determine only the revocability of the trusts under section 23 of the Personal Property Law, and the validity of the primary trust was sufficient to sustain a holding that there were remainders in the children. The Referee properly found that the causes of action were different; estoppel is accordingly limited to the part actually determined; that is, that the children have remainders. The validity of the secondary trusts for the children was not in issue, passed upon, or necessary to that decision; on that there was no adversary trial and the decision is not res judicata. But there was an adversary trial and final adjudication on the issue of the children’s remainders and as to that issue the prior decision is res judicata. We may not now overrule that determination by holding, as the order appealed from does, that the fund on termination of the trust goes by reversion to the settlor’s estate.
*992 The trust herein was an inter vivos, not a testamentary trust. It is true the powers of appointment were exercised by the settlor through her codicil which has been duly probated in the Surrogate’s Court, County of New York. But it is settled law that when a power of appointment is exercised by the donee thereof the appointees take, not from the donee directly, but from the donor under the doctrine of relation back applied to the power of appointment just as if the power and the instrument creating the power were incorporated in the one instrument (Matter of Stewart, 131 N. Y. 274, 281). The annuity and the outright gifts to the donees created by the valid exercise of the powers of appointment exist only through the dispositive provisions of the amended deed of settlement in which the codicil exercising the powers is merged as a matter of law. Title to the annuity and to the outright gifts charged upon the fund is acquired under the deed of settlement and not under the codicil.
As the secondary trusts for the children are clearly invalid, the remainders in the children were accelerated to the «date of the settlor’s death when the only valid trust, that is the primary trust for the settlor’s life, ended (see Matter of Eveland, 284 N. Y. 64, 73). Such remainders, however, and the funds in the trustee’s hands out of which they are to be paid are charged with a lien for payment of the annuity to d’Espinay and also subject to payment out of such funds to the donees of the outright gifts designated in the codicil. The settlor did not purport to create a testamentary annuity or charge her testamentary estate with its payment or with the payment of the said outright gifts.
As annuitant, d’Espinay does not have any right to elect to take his annuity in a capital sum; but on disclosure of all relevant facts and figures, if the court then deems it advisable for the interests of the children, primary object of the settlor’s bounty, the court may compute and determine the commuted value of the annuity in the hands of the trustee, pay over such capital sum to the annuitant less estate taxes apportioned thereon and after paying the outright appointees, estate taxes and all expenses thereon, distribute the balance discharged of any lien, to the remaindermen or the guardians of their property appointed to receive the same (Matter of Miller, 257 N. Y. 349; Matter of Thomas, 254 N. Y. 292; Matter of Lathers, 137 Misc. 226; Matter of Ryan, 178 Misc. 1029, 1032, mod. in other respects 294 N. Y. 85). This procedure suggested but not directed and subject as above indicated to the court’s order, may apply by analogy to an inter vivos trust the rule made applicable to testamentary trusts in Buchanan v. Little (154 N. Y. 147, 152) and Dunham v. Deraismes (165 N. Y. 65, 70). In this ease in view of the unusual state of facts disclosed and the possibility of interests adverse to the interests of the infant remaindermen, the guardians of their property need not necessarily be the respective fathers of the infant remaindermen.
Payments totaling $93,000 have already been made out of the testamentary estate in partial discharge of the large estate tax liabilities, apparently leaving in that estate, as the only assets in the hands of the ancillary administrator, a relatively small sum. All estate taxes levied on the fund in the trustee’s hands, when ultimately fixed and determined together with interest or other charges thereon and any and all other expenses in connection therewith, are charges payable out of the trust fund. That fund is, however, not part of the actual testamentary estate but only of the artificial or taxable estate, since by the prior adjudication we are bound to hold that there is no reversion to the settlor’s estate. Accordingly only so much of the fund in the trustee’s bands *993 as is necessary to pay all estate taxes, interest, or other charges thereon, including any .and all expenses in connection therewith, shall be paid over by the trustee to the ancillary executor after such taxes and expenses have been determined. The ancillary executor should also be reimbursed for so much of the $93,000 of estate taxes already paid by the testamentary estate as are finally chargeable against the trust fund itself in contradistinction to the funds in the actual testamentary estate.
We think, too, that under the terms of section 124 of the Decedent Estate Law, d’Espinay’s annuity charged upon the assets of the trust must stand its proportionate share of estate taxes (Matter of Mills, 272 App. Div. 229, affd. 297 N. Y. 1012; Matter of Blumenthal, 182 Misc. 137, 140 [Foley, S.], affd. 267 App. Div. 949, affd. 293 N. Y. 707).
The total estate taxes and expenses of this proceeding amounting to more than several hundred thousand dollars are yet to be paid. Final assessment, apportionment and payment of such taxes should be expeditiously made.
The settlor died in 1941; but it is not until January, 1950, that this court is asked to rule on the construction of documents necessary to permit accounting and payment to those entitled thereto". A further reference has been directed by the order appealed from to take and state the trustee’s account and supplemental accounts and also to determine additional issues of facts relating to certain appointees of outright gifts. In that state of facts and in the light of the long period of time already elapsed since decedent’s death and the large expenses entailed including interest running on substantial unpaid estate taxes, all parties to this litigation should now proceed expeditiously without any unnecessary delay so that all issues may be finally determined as soon as possible and distribution made to those-entitled thereto.
The order appealed from should be modified in accordance with this opinion and, as so modified, affirmed, with costs to all the parties appearing and filing separate briefs payable out of the fund.