In the Matter of the Estate of FANNY GARRISON VILLARD, Deceased.

Surrogate's Court, Westchester County, April 28, 1933.

*Emmet, Marvin & Martin* [*Langdon P. Marvin, ·Joseph K. Savage, Richard S. Emmet* and *Theodore S. Hope* of counsel], for the trustee.

*Sullivan & Cromwell* [*William K. Laws* of counsel], for the respondents.

*Victor McLean Day* [*Alexander D. Plaskow* of counsel], special guardian.

SLATER, S. The testatrix executed her will on June 20, 1924, and a codicil thereto on September 17, 1927. She died on July 5, 1928. We are concerned with the fifth paragraph of the will which creates a trust for $50,000 for the daughter-in-law, Mariquita Serrano Villard, during the term of her life, the trustee to pay over the net income to the beneficiary and, upon her death, to pay over the capital pursuant to her power of appointment by will, and, in the event of failure to do so, to distribute it among her children and the issue of any deceased child.

The trust corpus has been set up and among its assets are 100 shares of the common stock of the North American Company. Pursuant to the terms of the will, the trustee is permitted to retain stock of such companies. During the period of the trust, the company has never paid a dividend in cash. It has paid quarterly stock dividends from current annual earnings.

The trustee, since the inception of the trust, cashed the stock dividends each time and paid cash amounting to $2,984.62 to the life beneficiary.

The objectant herein is the special guardian for the infant child, one of the remaindermen. It is the contention of the special guardian that it was incumbent upon the trustee to add the stock dividend to the corpus of the trust, pursuant to section 17-a of the Personal Property Law, in effect May 17, 1926. Is this contention valid? That is the question.

It will be noted that the first paper writing was executed before section 17-a, as now written, took effect, and the codicil, which does not affect the instant question, was executed subsequent to the time section 17-a became law.

The codicil republished the will and, consequently, the legal effect is to republish the will as of the date of the codicil. The will

became effective at that time. (*Matter of Simeone,* 141 Misc. 737; *Matter of Greenberg,* 261 N. Y. 474.)

Section 17-a of the Personal Property Law says: "*Unless otherwise provided* in a will, deed or other instrument, which shall hereafter be *executed* and shall create or declare a trust, *any dividend* which shall be payable in the stock of the corporation * * * shall be principal and not income of such trust."

What did the lawmakers intend by the use of the words " any dividend which shall be payable in the stock of the corporation? "

In *Matter of Osborne* (209 N. Y. 450, 476) the court established a rule of law affecting *extraordinary* stock dividends, indicating the difference between such dividends and *ordinary* stock dividends. " The dividends usually declared by corporations are the ordinary dividends such as are declared from year to year or at other regular dividend periods. Extraordinary dividends are the exception." There is a distinct difference between the two kinds of dividends. All the reported cases on the subject deal with *extraordinary* dividends. No case has been submitted to me referring to *ordinary* dividends payable from current yearly earnings.

In 1922, by chapter 452, the Legislature enacted section 17-a of the Personal Property Law, permitting a will maker to declare stock dividends to become principal and that the same shall not be violative of the rule against accumulation of income. In 1926, by chapter 843, the Legislature enacted the present section 17-a of the Personal Property Law. It took away the option theretofore given and made all such stock dividends principal " *unless otherwise provided in the will.*" Was the amendment of 1926 intended to apply to *ordinary* stock dividends payable from current yearly earnings?

The great fundamental rule in construing statutes is to ascertain and give effect to the intention of the Legislature. But where the language of the statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves upon the court of ascertaining the true meaning. If the intention of the Legislature cannot be discovered, it is the duty of the court to give the statute a reasonable construction, consistent with the general principles of law.

"Another cardinal rule of construction is that the legislative intent is to be determined from the provision of the act as a whole. Every statute is to be construed with reference to the general system of laws of which it forms a part, and must, therefore, be interpreted in the light of the customary or unwritten law, of other statutes on the same subject and of the decisions of the courts."

(*Matter of Littleton*, 129 Misc. 845, 848.) In the effort to discover the exact intention of a statute claiming to effect a change, the history of the legislation upon the subject will be carefully examined and all the statutes affecting it read together. (*Seligman* v. *Friedlander*, 199 N. Y. 373, 376; *Matter of Littleton*, 129 Misc. 845, 848.)

The Legislature of 1926, by chapter 543, section 1, amended the Tax Law and made a clear distinction between *ordinary* dividends paid in stock and *extraordinary* stock dividends. The same Legislature enacted the present section 17-a of the Personal Property Law.

In *People ex rel. Clark* v. *Gilchrist* (243 N. Y. 173 [1926]) it was held that a strict stock dividend allocated by a trustee to a life beneficiary was not subject to an income tax. The court cited the amendment in the Income Tax Law in the definition of " dividends," this amendment having been adopted on April 22, 1926 (Laws of 1926, chap. 543, § 1). This definition is now contained in section 350 of the Tax Law, subdivision 8, and reads as follows: " The word ' dividend ' means any distribution made by a corporation out of its earnings or profits to its shareholders or members, whether in cash or in other property *or in stock of the corporation, other than stock dividends* as herein defined. ' Stock dividends ' means new stock issued, for surplus or profits capitalized, to shareholders in proportion to their previous holdings."

The Legislature, therefore, made a clear distinction between *ordinary* dividends paid in stock and *extraordinary* stock dividends. This same Legislature within a few weeks, on May 17, 1926, amended section 17-a of the Personal Property Law, as we have stated above. It must be obvious that in using the words " any dividend which shall be payable in the stock of the corporation " and " any such stock dividend," the Legislature meant stock dividends in the strict and usual sense, and not *ordinary* dividends payable in stock; and that the distinction made in the Tax Law was in mind in the amendment to the Personal Property Law.

The purpose of the amendment to section 17-a was to abolish the rule laid down in the *Osborne* case, relating only to *extraordinary stock dividends*. It is further set forth in *People ex rel. Clark* v. *Gilchrist* (*supra*, at p. 182), where the court says: " The same Legislature that excluded stock dividends from the category of income for the purpose of taxation, went farther and amended the Personal Property Law (Cons. Laws, ch. 41) by enacting that under any will or deed hereafter made, unless otherwise therein provided, stock dividends shall be principal and not income of a trust (L. 1926, ch. 843; Pers. Prop. Law, § 17-a). The rule previously applied had resulted in so many complications and obscuri-

ties as to be almost unworkable in practice. (*U. S. Trust Co.* v. *Heye*, 224 N. Y. 242; *Bourne* v. *Bourne*, 240 N. Y. 172.) It involved elaborate accountings for the purpose of determining how far the dividends were the result of profits accumulated before the creation of the trust, and how far the result of profits accumulated thereafter. The Legislature evinced its will that there should be an end to these complexities hereafter in the administration of the law of trusts."

In this case the court was at all times speaking of *extraordinary* stock dividends.

Section 10 of the Personal Property Law, until April 2, 1922, read: "The term 'income of personal property,' as used in this article, means the income or profits arising from personal property, and includes the interest of money and the produce of stock."

On April 3, 1922, the same day when section 17-a was first adopted, a clause was added to the above section 10, reading "but excludes the stock dividends described as principal in section seventeen-a."

That is the law today. Stock dividends can be legally accumulated, but "the income or profits arising from personal property" including "the produce of stock" cannot be accumulated beyond a minority. These are signposts of legislative intention. The court by these words has declared the legal intent of the statute as applying to *extraordinary* stock dividends.

The inference is plain that the "stock dividends" mentioned in section 17-a are *extraordinary* stock dividends such as dealt with in *Matter of Osborne* (*supra*). Ordinary dividends are "the income of personal property," and to allocate them to principal would result in an unlawful accumulation under section 16 of the Personal Property Law. They are not "stock dividends," even though payable in stock, and they are not, therefore, exempt from the rule against accumulation by the amendment to section 10 or by the terms of section 17-a.

The stock dividends in the instant case do not fall within the terms of section 17-a. (*Matter of Van Schoonhoven*, 142 Misc. 384, 387; affd., 233 App. Div. 886; right to appeal denied, 234 id. 639, and further denied by the Court of Appeals, Sept. 15, 1931.) In this case the court said: "Section 17-a of the Personal Property Law was enacted and amended more for the purpose of avoiding the objection that the adding of stock dividends to the principal would violate the provision against the accumulation of income; and in disposing of the question now the surrogate is of the opinion that the will and codicil of the decedent should be construed under this law in a manner that will best carry out the manifest intention

of the testatrix, that is, *that only the normal and usual income received from her securities should be disbursed to the beneficiaries.*"

For the sake of clarity, section 17-a should be amended to plainly state whether stock dividends paid out of yearly earnings are affected by its terms.

Let us turn to ascertain the intent of the testatrix. Did she " otherwise provide in a will? " If section 17-a is effective, it is operative only where the intention is not contrary thereto.

In construing the will of Mrs. Villard, her intent is to be ascertained " from the language employed in the creation of the trust, from the relations of the parties to each other, their condition and all the surrounding facts and circumstances of the case." (*McLouth* v. *Hunt*, 154 N. Y. 179, 189, 190.) The court took extrinsic evidence (*Matter of Johnson*, 123 Misc. 834, 837, and cases cited), and ascertained that Henry Villard, the husband of the testatrix, founded the North American Company; that the testatrix herself owned 4,000 shares of this family stock for some years prior to and at the time of her death; that since October, 1923, the North American Company had paid dividends on this common stock solely in common stock; that they had paid dividends yearly out of net annual earnings; that this practice has continued until the present day; that the company provided printed forms or orders for its stockholders by which they could direct that their dividends of the stock could be sold and cash paid to them instead; that the testatrix, with but one exception, sold these shares of stock issued as dividends, took the cash and treated the cash as stock dividends; that such shares of stock issued as dividends were always paid against current net earnings; that they were paid regularly each quarter year; that the testatrix in her lifetime treated and regarded these dividends the same as cash dividends.

There is very substantial reason to believe that it was the intention of the testatrix that the beneficiary of the trust in the instant case should enjoy the same use and income from the property that she had enjoyed. (*Matter of Enz*, 204 App. Div. 634, 637; affd., 237 N. Y. 577.)

She must have known that if such stock dividends continued and should be treated as principal, there would be no income from this part of the trust investment. Her will shows that she intended her beneficiaries to have the full and undiminished income of their trusts as evidenced in the twelfth paragraph of her will. Here she speaks of the payment of the " full income " to the beneficiaries. In the fifteenth clause she directs all transfer taxes to be paid out of the general residuary estate " so that such legatee shall be entitled to receive or enjoy the benefit of the *full sum* bequeathed

to and for the benefit of him or her." These clauses evince her general intent. The controlling test here is one of " presumable intention." (*Equitable Trust Co.* v. *Prentice*, 250 N. Y. 1; *Pratt* v. *Ladd*, 253 id. 213, 219.) The testatrix's primary object was the life beneficiary.

There is no difference between annual cash dividends and annual stock dividends paid out of current earnings. (*McLouth* v. *Hunt*, supra, at pp. 193, 194; *Matter of Mart*, 139 Misc. 558; *Eisner* v. *Macomber*, 252 U. S. 189, 207; American Law Institute, Restatement of Trusts, Tentative Draft No. 4, Feb. 2, 1933, p. 62; 46 Harvard Law Review, Dec. 1932, p. 298; Id. Mar. 1933, p. 776; Tax Law, § 350, subd. 8.) Profit is gain to be taken as earnings as distinguished from gain by increment in capital valuation. (*Pratt* v. *Ladd*, supra; *Matter of Jackson*, 258 N. Y. 281, 289.)

By the use of the words " net income " the testatrix intended to include everything in the way of income or profits accruing from the corpus of the trust fund. (*Matter of Hagen*, 237 App. Div. 476, 481 [Jan. 1933].) " Words, as we are told, are flexible. * * * 'Income' like most other words, has different meanings dependent upon the connection in which it is used and the result intended to be accomplished." (*Equitable Trust Co.* v. *Prentice*, supra, at p. 11.)

Net profits of a business are deemed income. Dividends are paid out of profits where the excess of current receipts is over the current payments. Such are ordinary dividends.

In the instant case the distribution of profits on yearly gain was not a true stock dividend, even though offered through a giving of stock. A true stock dividend is merely an increase in the number of shares; the increased number representing the same property that was represented by the smaller number of shares. A dividend is not capital, but the product of capital, the profits earned.

The earnings of the year are " *income* " within the terms of the will, whether paid in cash or stock. The draftsman used the word " income " to mean what he wanted it to mean. His meaning in the light of extrinsic evidence and as gathered from within the four corners of the will is clear.

The use of the word " income " in this case overcomes the terms of section 17-a of the Personal Property Law, even if held effective. The presumable and declared intention of the testatrix was to add ordinary annual stock dividends to income and consequently pass to the trust beneficiary. The decision in this case may well proceed on the language of the will.

I hold that the income paid by ordinary stock dividends from yearly earnings belongs to the trust beneficiary.

Submit order.