In the Matter of the Estate of THOMAS F. RYAN, Deceased.
GEORGE E. CLEARY et al., as Executors of CLENDENIN J. RYAN, Deceased, Appellants and Respondents; UNITED STATES OF AMERICA, Intervener, Appellant and Respondent; CLENDENIN J. RYAN, JR., et al., Respondents and Appellants, and GUAR- ANTY TRUST COMPANY OF NEW YORK, as Trustee for the Benefit of CLENDENIN J. RYAN under the Will of THOMAS F. RYAN, Deceased, Respondent.

Argued January 2, 1945; decided March 1, 1945.

*John L. Gray, Jr.,* for George E. Cleary and another, **as** executors of Clendenin J. Ryan, deceased, appellants **and** respondents. I. On the rent offset claim, appellants hereby concur and join in the brief filed herein on behalf of appellant United States of America. II. Section 17-a of the Personal Property Law was not intended to apply where so-called stock dividends are paid out of current corporate earnings. The words " stock dividend " as used in section 17-a do not include stock dividends paid out of current earnings. (*Matter of Villard,* 147 Misc. 472; *Matter of Osborne,* 209 N. Y. 450; *Estate of John T. Atterbury,* N. Y. L. J., May 5, 1937, p. 2251; *Matter*

*of Kennedy,* N. Y. L. J., Feb. 18, 1938, p. 848, 254 App. Div. 846, 279 N. Y. 255; *Estate of Marie M. Runkle,* N. Y. L. J., May 18, 1939, p. 2295; *City Bank Farmers Trust Co.* v. *Ernst,* 263 N. Y. 342; *Kellogg* v. *Mann,* 166 Misc. 791, 254 App. Div. 812.) III. The construction sought by the remaindermen would defeat the testator's intention, place an onerous burden on trustees, and lead to endless litigation. IV. The will provides by clear implication that so-called stock dividends are payable to the life beneficiary and accordingly the provisions of section 17-a do not apply. (*Matter of Villard,* 147 Misc. 472.)

*John F. X. McGohey, United States Attorney for the Southern District of New York* (*John B. Creegan* of counsel), for United States of America, appellant and respondent. I. The claim of the United States for income taxes must be accorded priority over the claim for rent of the trustee by the plain command of section 3466 of the Revised Statutes. (*Matter of Watson,* 262 N. Y. 284; *Equitable Trust Co. of N. Y.* v. *Miller,* 197 App. Div. 391, 233 N. Y. 650; *Matter of Summerfield,* 172 Misc. 509; *Jarcho Bros., Inc.,* v. *Leverich,* 240 App. Div. 783; *Matter of Depew,* 179 Misc. 1074; *Shiposki* v. *Von Leidersdorff,* 261 App. Div. 1002; *Matter of Lincoln Chair & Novelty Co.,* 274 N. Y. 353; *United States* v. *Texas,* 314 U. S. 480; *In re Stephen Van Winkle,* 49 F. Supp. 711; *United States* v. *Emory,* 314 U. S. 423; *New York* v. *Maclay,* 288 U. S. 290; *Thistle* v. *Jones,* 123 App. Div. 40.) II. In any event the trustee has no equitable retainer or charge on the accrued income by reason of the rent claim. (Restatement, Trusts, §§ 251, 252, 253, 257, Scott on Trusts, §§ 251, 252, 255.1; *Smith* v. *Kearney,* 2 Barb. Ch. 533; *Matter of Van Nostrand,* 177 Misc. 1; *Smith* v. *Smith,* 1 Y. & C. Ex. 338; *Matter of Grifenhagen,* 174 Misc. 559; *Matter of Friedman & Bro., Inc.,* 150 Misc. 209; *Matter of Suderov,* 153 Misc. 214; *Thistle* v. *Jones,* 123 App. Div. 40; *Matter of Summerfield,* 172 Misc. 509; *In re Abrahams* [1908] 2 Ch. [Eng.] 69; *Hayes* v. *Hayes,* 2 Del. Ch. 191; *Matter of Cramer,* 166 Misc. 713; *Matter of Ungrich,* 201 N. Y. 415; *Matter of Chamberlin,* 289 N. Y. 456.) III. Nor has the trustee a legal right to set off the rent due after the death of the life beneficiary against the income accrued to the date of death of the life beneficiary. (*Pink* v. *Title Guarantee & Trust Co.,* 274 N. Y. 167; *Fera* v. *Wickham et al.,* 135 N. Y. 223;

*Martin* v. *Kunzmuller,* 37 N. Y. 396; *Bradley* v. *Angel,* 3 N. Y. 475; *Matter of Friedman & Bro., Inc.,* 150 Misc. 209; *Matter of Suderov,* 153 Misc. 214; *Gerseta Corporation* v. *Equitable Trust Co.,* 241 N. Y. 418.) IV. The lease and modification thereof did not in express terms authorize the retention by the trustee of income as against future obligations under the lease. If it can be so interpreted, the provision is null and void in violation of section 15 of the Personal Property Law. (*Matter of Glover,* 246 App. Div. 781.) V. The respondent, United States of America, concurs and joins in the brief filed herein on behalf of respondents George E. Cleary and Robert G. Surridge, as executors of Clendenin J. Ryan, deceased.

*Leonard P. Moore* for Clendenin J. Ryan, Jr., and others, respondents and appellants. I. The rent and other charges owing, under the Clendenin J. Ryan lease, to the trustee of the large trust are equitable charges, set-offs or liens against any accrued income in trust. (*Matter of Miller,* 257 N. Y. 349; *Matter of Thomas,* 254 N. Y. 292; *Matter of Lathers,* 137 Misc. 226; *Matter of Juilliard,* 238 N. Y. 499; *Matter of Flint,* 120 Misc. 230, 206 App. Div. 778; *Matter of Van Nostrand,* 177 Misc. 1; *Matter of Burr,* 143 Misc. 877, 239 App. Div. 774; *American Surety Co.* v. *Vinter,* 224 Mass. 337; *Matter of Eisner,* 129 Misc. 106; *Belknap* v. *Belknap,* 87 Mass. 468; *Matter of Cramer,* 166 Misc. 713.) II. The Standard Oil Company of New Jersey stock dividends should be allocated to the corpus of the trusts. (*Helvering* v. *Griffiths,* 318 U. S. 371; *Matter of Osborne,* 209 N. Y. 450; *Matter of Greenberg,* 261 N. Y. 474; *Matter of Brann,* 219 N. Y. 263; *Matter of Smith,* 243 App. Div. 348; *Matter of Van Schoonhoven,* 142 Misc. 384, 233 App. Div. 886; *Equitable Trust Co.* v. *Prentice,* 250 N. Y. 1; *People ex rel. Clark* v. *Gilchrist,* 243 N. Y. 173; *Matter of Hagen,* 262 N. Y. 301; *Rhode Island Hospital Trust Co.* v. *Tucker,* 51 R. I. 507; *Coolidge* v. *Grant,* 251 Mass. 352; *Gibbons* v. *Mahon,* 136 U. S. 549; *Eisner* v. *Macomber,* 252 U. S. 189; *Towne* v. *Eisner,* 245 U. S. 418.)

*Edwin C. Hahn, Jr.* for Guaranty Trust Company of New York, as trustee, respondent.

LEHMAN, Ch. J. Clendenin J. Ryan died on August 21, 1939. In the will of his father, Thomas F. Ryan, he was named the life

beneficiary of a trust of a share of his father's residuary estate. The trustees were directed at his death to divide the fund held in trust for him into as many shares as there might be issue of the life beneficiary, per stirpes, him surviving; to hold each share set apart for issue born before the death of the testator in trust until the person for whom it had been set apart should reach the age of thirty, and then to pay over such share to the person for whom it had been set apart. Four children survived Clendenin J. Ryan. Two were over the age of thirty and were entitled immediately to the shares set apart for them. The other two have since then reached that age. Clendenin J. Ryan was also named as the secondary life beneficiary of a trust of a smaller share of the residuary estate of his father, with remainder to his four children.

Clendenin J. Ryan was named not only as the beneficiary but also as a trustee of the trusts created by his father. After his death his cotrustee, Guaranty Trust Company, filed its account of the proceedings of the trustees of the two trusts from the date of their last accounting to a time subsequent to the death of the life-tenant, and the executors of Clendenin J. Ryan joined in his behalf, as cotrustee, in that account. The account so filed was settled by written agreement of the accountants and the remaindermen, except that two controversial matters were reserved for further agreement or for determination by the court. These matters concern the disposition of dividends which had accrued prior to the death of the life tenant upon securities held in the larger trust and the allocation to principal or income of shares of common stock of Standard Oil Company received by the trustee during the lifetime of the beneficiary, as a stock dividend upon stock of Standard Oil Company in the two trusts.

The executors of Clendenin J. Ryan thereafter filed a petition for the determination of the matters upon which there was no agreement. An order granting leave to the United States to intervene was made upon its petition, stating that it has filed a claim for the unpaid balance of the income tax due from Clendenin J. Ryan at the time of his death. His estate is, concededly, insufficient to pay the claim of the United States even if the matters in controversy are decided in favor of the executor of the estate. The claim of the United States is entitled to priority

of payment over all other claims in the distribution of the assets of the estate of the insolvent debtor and the controversy is, in effect, between the remaindermen of the trusts and the United States. All facts which are relevant to the questions presented upon this appeal have been stipulated by the parties.

In April, 1931, Clendenin J. Ryan and Guaranty Trust Company as cotrustees of the larger trust purchased a house in the city of New York for the sum of $206,000. The house "was purchased as a principal investment" of the trust and the purchase price was paid out of the proceeds of sales of securities in the trust. The house was immediately leased by the cotrustees to Clendenin J. Ryan individually for a term of five years ending April 5, 1931, at an agreed rental of $10,329.40, and the tenant agreed, in addition, to pay all taxes, rates, charges and assessments which might be imposed upon the premises and that unpaid taxes, etc., should be added to the installment of rent next thereafter to become due.

The rent, when paid by the life beneficiary of the trust as tenant of the property, which was a "principal investment" of the trust, became part of the income to which the tenant was entitled as beneficiary. To avoid such costly circuity, the lease was modified in October, 1933, to provide that "the annual rental of $10,329.40 provided in said agreement of lease to be paid by the Tenant is hereby reduced to the sum of $10 annually from the date hereof until the end of the term provided in said agreement of lease or until the death of the Tenant, whichever event occurs earlier, subject, however, to the reinstatement of said annual rental in the manner and upon the happening of events as hereinafter provided. In the event of the Tenant's death before the expiration of the term provided in said agreement of lease, then and in that event the annual rental of $10,329.40, or that portion of the same accruing after the death of the Tenant, shall be reinstated and become and continue an obligation of the estate of the Tenant."

The term of the lease as modified was extended to April 6, 1941, and it was also provided that "in the event that the Tenant fails to pay and discharge, when the same shall become due, the taxes, rents, charges, assessments, insurance and other charges provided in said agreement of lease to be paid by the Tenant, in addition to the annual rent therein provided for, or to satisfy

the liabilities therein assumed by him, then and in that event such charges may be paid or such liabilities may be satisfied by the Landlord as Trustees of the aforesaid trust for the benefit of the Tenant provided under the will of Thomas F. Ryan, deceased, out of the income of said trust otherwise payable to the said Tenant as beneficiary of said trust.''

Clendenin J. Ryan occupied the leased property as his home, and, until his death in August, 1939, he complied with all the terms of the lease and paid the rental and all charges imposed upon the property. After his death the executors of his estate relinquished possession of the premises. The surviving trustee refused to accept a surrender of the lease but took possession of the premises for their protection. It was agreed that such action should be without prejudice to any question of the executors' possible liability under the lease. Though, as we have said, two of the remaindermen of the trust were over the age of thirty when the life beneficiary died, and were entitled to their share of the trust fund, and the other two remaindermen have since reached that age, the surviving trustee, in accordance with agreements executed by each remainderman, still holds the premises and has filed a claim against the estate of the deceased life beneficiary in the amount of $26,109.98. That amount is made up of (1) $16,771.44 of fixed rental of the premises for the remainder of the extended term for which the premises were leased to the life tenant, and (2) $9,338.54 for taxes, water charges, upkeep and maintenance for the same period, constituting, as agreed, additional rental under the terms of the lease. Since the estate of the deceased beneficiary is concededly insolvent and the United States has priority in the distribution in the assets of the estate among the creditors of the decedent, nothing will be paid to the trustee by the estate upon that claim.

Guaranty Trust Company, as surviving trustee of the trust in which the leased premises were held as a '' principal investment '', has retained the sum of $69,088.39 out of income which had accrued before the death of the life tenant. The life tenant could not assign that income nor could his creditors obtain a lien upon it while it was retained by the trustees, except to the limited extent permitted by section 684 of the Civil Practice Act. The executors upon the death of the life beneficiary have

an unquestioned right to the accrued income which had not been paid to the life beneficiary unless the surviving trustee may set off as a charge against that income the amount which, after the death of the beneficiary, became due from his executors as rental under the lease made by the trustees as " landlord " to the life beneficiary as " tenant ". The right of the United States to priority in payment of its claim against the deceased life beneficiary out of the assets of his estate, is not questioned. Out of the income of the trust which had accrued during the lifetime of the life· beneficiary the surviving trustee has set aside the sum of $42,798.41 as a reserve to cover possible liability to the United States. No objection is made by the executors of the life beneficiary or by any other person to the retention by the surviving trustee of these moneys as a reserve against that liability. The surviving trustee retains in addition the sum of $26,109.98, the amount of the claim of the surviving trustee against the estate of the life beneficiary. The surviving trustee and the remaindermen of the trust created for the benefit of Clendenin J. Ryan contend that the beneficial interest of the deceased beneficiary is subject to a charge for the amount of the liability of the estate of the beneficiary, because it arises out of an obligation to pay moneys to the trustees which the life beneficiary assumed under the lease to him of the property, which he and his cotrustee had purchased as a capital investment of the trust. The courts below have sustained that claim. We do not agree with that determination.

The priority of the United States in the order in which the property of an insolvent debtor, or of his estate, must be distributed among his creditors is not created by the law of the State and may not be impaired or superseded by a legislative or judicial declaration of a rule of law of the State, however conclusive such declaration may be in other fields. (*United States* v. *Waddill Co.*, 323 U. S. 353.) In that decision, however, the general rule is implicitly recognized that the priority of the United States over other creditors is confined to the distribution of moneys or property to which, *under the law of the State*, the insolvent debtor, or upon his death his estate, is entitled, and that the rights of the insolvent debtor or his estate to property which may be available for distribution among his creditors are subject to and defined by the law of the State.

It has been said that where a beneficiary of a trust " wrongfully deals with trust property causing a loss to the other beneficiaries, he is personally liable for the amount of the loss, and his beneficial interest is subject to a charge therefor ". (Restatement, Trusts, § 253.) The life beneficiary Clendenin J. Ryan was, as we have said, also a trustee, and he joined with his cotrustee in the purchase — made at his request — of the real property thereafter leased to him. Authority to make such a purchase as a capital investment was conferred upon the trustees by the last will and testament of the creator of the trust. The parties have stipulated, too, that the purchase was made and the purchase price paid out of the proceeds of the sale of securities, " all as shown in the account of said co-trustees * * * as judicially settled and allowed by decree " of the Surrogate's Court dated April 25, 1935. The life beneficiary as trustee thereafter joined with his cotrustee as " landlord " in the lease of the property to himself as ʻʻ tenant ", and he occupied the leased property as his home; but the propriety and validity of the purchase and of the subsequent lease have not been challenged. Loss to the trust estate may have resulted from the purchase, but since there is neither claim nor proof that the purchase was wrongful, the beneficial interest of the deceased life beneficiary is not subject to a charge for such loss, and the courts below have not held otherwise.

The question remains whether that beneficial interest is subject to a charge for unpaid rent and taxes on the leased premises, which the beneficiary as " tenant " under the lease agreed to pay to the trustees as landlord. Applying the rule that " If one of the beneficiaries of a trust contracts to pay money to the trustee to be held as part of the trust estate and he fails to make the payment, his beneficial interest is subject to a charge for the amount of his liability " (Restatement, Trusts, § 252; Scott on Trusts, §§ 251, 252, 255.1), the Surrogate has held that the beneficial interest of the deceased life beneficiary is subject to a charge or offset for the amount which under the terms of the lease was payable to the trustees of the trust as " landlord ". We need not now decide whether the beneficial interest of a beneficiary of a trust who fails to make a payment of money which he has contracted to pay to the trustees to be

held as part of the trust estate is subject to a charge " for the amount of his liability " where his beneficial interest is not assignable and cannot be reached by creditors. (Cf. *Matter of Chamberlin,* 289 N. Y. 456, 461; *Blakemore* v. *Jones,* 303 Mass. 557; Scott on Trusts, § 255.1.) Here the beneficiary did not fail to pay during his lifetime the moneys, as they became payable, which he had contracted to pay, and the income of the trust would in no event have been subject to a charge for moneys which he had contracted to pay until he or his legal representatives failed to make the stipulated payment when it became due.

The " covenant to pay rent creates no debt until the time stipulated for the payment arrives. * * * It is not a case of debitum in praesenti solvendum in futuro. On the contrary, the obligation upon the rent covenant is altogether contingent." In some contingencies the stipulated rent payable in the future by a lessee for the right to occupy leased premises might never become due. (*In re Roth & Appel,* 181 Fed. 667, 669.) Citing that case and other cases, we approved that rule in *Kottler* v. *New York Bargain House, Inc.,* (242 N. Y. 28). (See, also, *Central Trust Co.* v. *Chicago Auditorium,* 240 U. S. 581; *Varick Spring Corp.* v. *Bank of United States,* 264 N. Y. 297.) In the case we are now deciding, the obligation to pay rent is, indeed, made contingent by the express provisions of the lease; for the lease as modified provided that if the trustees should sell the property before the expiration of the lease they might *at their option* cancel the lease, and if the trustees as " landlord " availed themselves of that option, no further payments would become due under the lease. Since concededly the beneficiary of the trust had not dealt wrongfully with the trust property and had not failed to meet his obligation to pay moneys which he had agreed to pay under his lease as such payments became due, and since his obligation to pay moneys in the future was contingent, no legal or equitable ground existed during his lifetime or at the time of his death for any charge against his beneficial interest in the trust. The life beneficiary was entitled to receive the accrued income of the trust and " On the death of the beneficiary of a spendthrift trust, his executor or administrator is entitled to income which has accrued under the trust at the time of his death but which has not been paid to the beneficiary." (Restatement, Trusts, § 158.)

The death of the life beneficiary terminated his beneficial interest in the trust estate; it did not terminate his contractual obligation, under the lease to him of the property of the trust estate, to pay rent and charges upon the leased premises. That obligation survived and is binding upon his executors. We repeat, however, that at the time of the death of the life beneficiary, no moneys then due under the lease were unpaid, and the obligation to pay money in the future was contingent and not fixed. The death of the life beneficiary did not accelerate the due date or change the nature of the obligation. Just as that obligation was not, during the life of the beneficiary, ground for a charge against income payable to him, so it could not be sufficient ground for a charge against income which had accrued during his lifetime if immediately upon his death such income became the property of his executors. We may point out here that the surviving trustees and the remaindermen of the trust have not contended that the contractual obligation of the beneficiary to pay rent in the future is not contingent, or that during the lifetime of the beneficiary or at the moment of his death money which under the lease might become due in the future could be charged or offset against income to which the beneficiary or his executors were entitled. Nor has the Surrogate held that such moneys could be charged or offset before the obligation to pay became fixed and absolute. But the lease was never canceled and as moneys became due thereunder the obligation to pay became absolute and liability arose. The Surrogate has held that *then* the amount of the liability could be charged or offset against the accrued income which had not yet been paid over.

The death of the life beneficiary not only terminated his interest in the trust fund but also terminated the trust period, at least in respect to the share of the two remaindermen who were over the age of thirty at the death of the life beneficiary. Doubtless, as the learned Surrogate pointed out in his opinion, the surviving trustee still had " the duty of accounting and distribution " and so the functions of the trustee were not entirely at an end. We may assume that legal title to moneys received by the trustee as income did not pass to the person entitled to the income until the trustee had deducted the legitimate charges against the money received and paid over the balance. A large

part of the accrued income had not been received by the trustee when the beneficiary died, and certainly legal title to that money could not pass to the executors on the death of the beneficiary. Nevertheless on the death of the beneficiary his executors then stood in the place of the beneficiary and became entitled to receive the income of the trust which had accrued but which had not yet been paid to the beneficiary. The only duty or function of the surviving trustee, in respect to the trust created for the beneficiary, which continued after his death was to pay over the income which had already accrued after deducting the legitimate charges upon that income. The right to the net income passed to the representatives of the beneficiary *on his death* and the income received by the trustee which it was in duty bound to pay over to the representatives of the beneficiary was subject only to the charges to which it was subject *at the time of the death* of the beneficiary. Performance of the trustee's remaining duty to pay over accrued income to the person entitled thereto might, we assume, be postponed a reasonable time for the convenience of the trustee, but the trustee by withholding payment could not obtain the right to charge against the income the amount of the liability against the estate of the beneficiary, which arose from an obligation which was still contingent at the death of the beneficiary and which became a liability of the estate after the period of the trust created for the deceased beneficiary had terminated. Not only was the obligation of the beneficiary upon his covenant to pay rent contingent when the beneficiary died, but when the obligation became absolute and payment of the promised moneys became due, the trust period was at an end and at least part of the moneys if paid would have belonged to the remaindermen and could not have been held by the trustee. In our opinion the claim of the executors of the beneficiary to income which accrued before the death of the life beneficiary and the claim of the trustees for rent and taxes which became payable, under the lease to the life beneficiary, after the death of the life beneficiary, are not cross claims, and the income to which the executors of the beneficiary became entitled on his death did not become subject to a charge for the amount of money which the executors failed to pay thereafter when the obligation to pay under the lease arose.

The creditors of the deceased beneficiary of a spendthrift trust are entitled to reach the accrued income received by his executor or administrator. (Scott on Trusts, § 158.1; Restatement, Trusts, § 158, comment a.) To permit the trustee of a trust to charge against the accrued income payable to the executor or administrator an amount due from the estate of the deceased beneficiary upon a debt which arose after the beneficiary died and the trust created for his benefit was ended, would give to the remaindermen of the trust a preference in the payment of the claim against the estate not based upon established rules of law or equity.

On December 15, 1938, Standard Oil Company of New Jersey paid a " regular dividend " of fifty cents in cash and an " extra " stock dividend of 1%. Each trust of which Clendenin J. Ryan was the life beneficiary owned some stock of Standard Oil Company of New Jersey and the surviving trustee holds the stock dividends paid on such stock. The stock dividends, it is stipulated, " were paid out of earnings and profits of the corporation accumulated subsequent to the purchase by said two trusts of the stock on which such dividends were paid." For that reason the executors of the life beneficiary claim that he was entitled to the stock dividends as income of the trust and that the stock dividends should now be paid to his executors.

The Personal Property Law, section 17-a, provides: " *Stock Dividends*. Unless otherwise provided in a will, deed or other instrument, which shall hereafter be executed and shall create or declare a trust, any dividend which shall be payable in the stock of the corporation or association declaring or authorizing such dividend and which shall be declared or authorized hereafter in respect of any stock of such corporation composing, in whole or in part, the principal of such trust, shall be principal and not income of such trust. The addition of any such stock dividend to the principal of such trust, as above provided, shall not be deemed an accumulation of income within the meaning of this article." It is said that this section is intended to apply only to extraordinary dividends payable in stock and that ordinary dividends paid in stock out of current earnings are not included in its scope. The Tax Law in article 16 entitled " *Taxes Upon and With Respect to Personal Incomes* " distinguishes between a " dividend " which is defined as " any distribution

made by a corporation out of its earnings or profits to its shareholders or members, whether in cash or in other property or *in stock of the corporation,* other than stock dividends " (Italics are supplied) and stock dividends which are defined as " new stock issued, for surplus or profits capitalized to shareholders in proportion to their previous holdings." (§ 350, subd. 8.) The Personal Property Law makes no such distinction and contains no such definition. Argument is made that the Legislature intended that the words " any dividend which shall be payable in stock " as used in section 17-a of the Personal Property Law should be limited by the definition of a stock dividend contained in the Tax Law. The Legislature did not so provide in express terms, and it is far from clear that it so intended. In plain language the Legislature provided that " *any* dividend which shall be payable in the stock of the corporation \* \* \* shall be principal \* \* \* ". In accordance with that mandate the Standard Oil Company dividends payable in stock must be allocated to principal.

The order of the Appellate Division and the decree of the Surrogate's Court should be modified in accordance with this opinion, and as so modified affirmed, without costs.

LOUGHRAN, LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur.

Ordered accordingly.