In the Matter of the Accounting of BANK OF NEW YORK AND FIFTH AVENUE BANK et al., as Trustees of a Trust Made with JEAN L. MATTHEWS, Appellants-Respondents. MARK S. MATTHEWS, Respondent-Appellant; AARON MARCUS, as Guardian ad Litem for GEORGE G. MATTHEWS and Others, Appellant-Respondent.

First Department, March 25, 1952.

*William H. Matthews, Jr.,* of counsel (*Robert W. Knox* with him on the brief; *Knox, Matthews & Lishman,* attorneys), for Mark S. Matthews, respondent-appellant.

*Edward S. Bentley* of counsel (*Conklin & Bentley,* attorneys), for accounting trustees, appellants-respondents.

*Aaron Marcus,* as guardian ad litem, appellant-respondent in person.

SHIENTAG, J. These are cross appeals from an order of Special Term settling and allowing as filed the intermediate account of two trustees, Bank of New York and Fifth Avenue Bank, and Harry H. Flagler, under a deed of trust executed by Jean Louise Matthews. Mark Stanley Matthews, the life income beneficiary and cotrustee of the express trust, appeals from that part of the final order which determines that certain stock dividends are allocable to the principal of the trust and not payable to the life beneficiary. The accounting trustees and the guardian ad litem of the infant remainderman appeal from so much of the order as directs the trustees to pay to the attorneys for the life beneficiary, out of the principal of the trust, the sum of $5,000 for their fee and $582.55 for their disbursements.

The trust indenture was executed on December 29, 1934. The settlor, Jean Louise Matthews, and the income beneficiary, Mark Stanley Matthews, were then husband and wife; the remainderman, George Gregory Matthews, was and is the only issue of said marriage, and was and is the sole issue of the settlor, Jean Louise Matthews. Among the securities composing the corpus of the trust were included 5,000 shares of the capital stock of Standard Oil Company (New Jersey), and 2,000 shares of the capital stock of Standard Oil Company of California. The clause relevant to the questions here raised reads as follows: " Fifth: All stock dividends and all rights to subscribe, accruing on or in respect of any securities held hereunder, shall be deemed to be principal, except that regular stock dividends paid in lieu of or in conjunction with regular cash dividends, shall be deemed to be income, and all cash dividends accruing on or in respect of any such securities, except liquidating dividends, shall be deemed to be income." The question here presented concerns the proper allocation between principal and income of stock dividends of the Standard Oil Company (New Jersey) distributed by it in 1948 and 1949; stock dividends of the Standard Oil Company of California distributed by it in 1949 and 1950; shares of Consolidated Natural Gas Company distributed by its parent company, Standard Oil Company (New Jersey) in 1943, and rights to subscribe to stock of the Consolidated Natural Gas Company distributed by it in 1947. The above shares and rights to subscribe were credited by the trustees to principal. It is from the approval by the court below of that allocation that the life beneficiary here appeals.

With respect to the stock distributions of the two Standard Oil companies, certain major facts are substantially undisputed. They were paid out of part of the current year's earnings and were declared at the regular semiannual dividend dates; the total amount of the dividends declared on these occasions, cash plus stock, was in line with prior dividend declarations; the size of each total dividend declaration, cash plus stock, was small in relation to the market value of the shares, and each of the dividends was declared partly in stock, so as to retain earnings for needed capital expenditures. It also appears from the record that when the dividends were declared, the company stated that it was not committing itself to an established policy of declaring dividends partly in stock. Since it is undisputed that the stock dividends in question were " paid in lieu of or in conjunction with regular cash dividends ", the proper allocation of the dividends in question turns upon the construction of the word " regular " in the above-quoted paragraph of the trust instrument.

The trustees and the remainderman claim, and the court below held, that by the words " regular stock dividends " the settlor meant stock dividends paid pursuant to an established policy of paying dividends, in whole or in part, in stock at stipulated time intervals. The life beneficiary contends that the words " regular stock dividends " were used synonymously with the words " ordinary stock dividends ". It is not disputed that the dividends in question here, being paid out of current earnings and comparable in amount to the usual dividends of the company, would be considered ordinary stock dividends.

Our primary inquiry here, of course, is to ascertain the intention of the settlor, and in such inquiry it is important to determine the established legal significance of the words used. For many years the courts of this country grappled with the manifold problems involved in determining whether corporate dividends should be allocated to income or to principal with respect to trust instruments in which no attempt was made to define those terms specifically (2 Scott on Trusts, § 236; 4 Bogert on Trusts, ch. 40). Independent of statute, two major rules were evolved. Under one of those rules — the Massachusetts rule — no distinction was made because of the size or amount of the dividend. All stock dividends were to be credited to principal and all cash dividends to income (*Lyman* v. *Pratt*, 183 Mass. 58). Under the other major rule — the Pennsylvania rule — it was provided that ordinary dividends were payable to income and extraordinary dividends were apportionable between income

and principal on a formula which need not here concern us (*Matter of Nirdlinger,* 290 Pa. 457). This latter rule was adopted by New York (*Matter of Osborne,* 209 N. Y. 450) prior to the adoption by this State of section 17-a of the Personal Property Law.

In the jurisdictions subscribing to the Pennsylvania rule, the sole distinction was between ordinary dividends and extraordinary dividends (see, e.g., *Matter of Nirdlinger, supra,* p. 478; *Matter of Osborne, supra,* pp. 459, 476, 477). The word " regular " as applied to dividends was never given any construction distinguishing it from the word " ordinary ". In ascertaining whether a dividend was an ordinary dividend, an important consideration was whether or not it was announced at periodic, recurrent intervals (Restatement, Trusts, § 236, Comment c). Thus, in *Matter of Osborne* (*supra,* p. 476) the following appears: " The dividends usually declared by corporations are the ordinary dividends such as are declared from year to year or at other regular dividend periods." It is a reasonable assumption that because a normal attribute of ordinary dividends was their declaration at specified intervals, the practice developed of using the word " regular " interchangeably with the word " ordinary ". In any event, it seems plain that such a practice did develop. Thus, in *Matter of Villard* (147 Misc. 472) stock dividends, plainly regular in the sense of being announced at stipulated intervals, were repeatedly described by the Surrogate as ordinary dividends. Also, in *Matter of Ryan* (294 N. Y. 85) the court, at one point, refers to the dividends in question as regular stock dividends and at another point refers to them as ordinary stock dividends. The same use of " regular " interchangeably with " ordinary " as applied to dividends appears in three of the leading text writers on this question (2 Scott on Trusts, § 236.1–236.7; 4 Bogert on Trusts, § 847; 3 Simes on Law of Future Interests, §§ 693–695). All of these authorities support the view that when the settlor used the word " regular " in the trust instrument in question here, she used that word in the sense of " ordinary ".

Practical considerations support this construction as well. The learned Special Term in effect held that a stock dividend is a " regular stock dividend " only if the declaring company had an established practice of declaring stock dividends. This would make the definition of " regular stock dividend " solely dependent upon the number of times such dividends had been declared. This would tend to create uncertainty and confusion rather than to accomplish the purpose of the settlor which was, in substance,

to credit to income what in effect was declared out of current income and to credit to principal what, as the layman understands it, was declared out of capital. Nor is it likely that, in the mind of the settlor, a declaration of established policy by the corporation concerned, always subject to change, was to be the determining factor rather than the basis on which the dividend was declared.

The above analysis only lends point to what seems to us to be the fundamental consideration in this case; namely, the plain unreasonableness of ascribing to the settlor the intention of depriving her husband of stock dividends of the kind here involved. At the time this trust instrument was executed, New York had adopted section 17-a of the Personal Property Law which provided, in substance, that, in the absence of any expression of contrary intent, all stock dividends were to be allocated to principal. The statutory provision thus adopted the Massachusetts rule — a rule universally acknowledged to be based not on considerations of justice and fairness, but rather to have been shaped by factors of judicial convenience and expedience (4 Bogert on Trusts, § 843; 2 Scott on Trusts, p. 1303; *Lyman* v. *Pratt,* 183 Mass. 58, 61, *supra*). It is true that in *Matter of Villard* (147 Misc. 472, *supra*) the Surrogate held that the statutory rule did not apply to ordinary stock dividends. But that opinion had not been tested in any appellate tribunal at the time this trust instrument was executed, and that reliance could not be safely placed upon it was evidenced by the unanimous determination of the Court of Appeals to the contrary some years later (*Matter of Ryan,* 294 N. Y. 85).

It was against this legal background that the trust instrument, with the provision quoted above, was drawn. This provision was plainly designed to vary the statutory rule summarized above. The language used by the settlor in article Fifth in the first clause manifested her intention to accept the provision of the statute that any stock dividend of a corporation whose stock was in the corpus of the trust would be principal and not income of the trust unless any such stock dividend came within the exception later provided in the clause. We think it clear that the wife, by that exception, intended to safeguard her husband against the loss of his normal income because of distributions of ordinary dividends declared out of current earnings in stock rather than in cash, whether in part or in whole. No other explanation seems to us to be either reasonable, fair, expedient, or in any way supported by legal authority. Accordingly, we hold that the court below erred in allocating to principal the

stock dividends of the Standard Oil Company (New Jersey) in 1948 and 1949, and the stock dividends of the Standard Oil Company of California in 1949 and 1950.

The distribution by the Standard Oil Company of New Jersey of shares in its subsidiary corporation, Consolidated Natural Gas Company, presents a substantially different problem. If this be treated as a "stock dividend", clearly it is one which is extraordinary in character and not within the exception of article Fifth of the trust indenture. It has been held, however, that "A dividend of the stock of other corporations is not a stock dividend, but is the same as a dividend of cash" (*City Bank Farmers Trust Co.* v. *Ernst,* 263 N. Y. 342, 346). Therefore, that portion of the trust instrument purporting to regulate the allocation of stock dividends is inapplicable. Our concern here is thus with the latter part of article Fifth of the trust instrument quoted above, which states that "all cash dividends accruing on or in respect of any such securities, except liquidating dividends, shall be deemed to be income." The trustee and the remainderman urged below, and the court agreed, that the distribution of stock of the Consolidated Natural Gas Company represented a liquidating dividend. The facts and circumstances surrounding the stock distribution make it clear, in our view, that this determination was correct, and that the dividends in question were properly allocated to principal.

Prior to October 15, 1943, Standard Oil Company (New Jersey) owned the stock of five subsidiary corporations in the natural gas field. The Security and Exchange Commission (S.E.C.) directed the Standard Oil Company to divest itself of ownership of these companies. The plan adopted for such divesture embraced the transfer from the Standard Oil Company (New Jersey) to the Consolidated Natural Gas Company of all of the outstanding capital stock of the other four subsidiaries in exchange for all of the capital stock of the Consolidated Natural Gas Company, and the distribution of the shares of Consolidated Natural Gas Company to the stockholders of the Standard Oil Company. The distribution of the Consolidated shares here in question thus represented the culmination of a plan for the divestiture by the Standard Oil Company of its ownership of five companies engaged in the natural gas business. The distribution was charged against capital surplus. Under these circumstances, it is difficult to perceive how the distribution in question could be considered anything other than a partial liquidation by the Standard Oil Company.

So far as the rights to subscribe to stock of the Consolidated Natural Gas Company are concerned, in view of the above holding that stock in that company was properly allocated to principal, it follows that rights to subscribe to additional stock must also be allocated to principal under the terms of the trust.

The trustees and the remainderman appeal from the direction of the court awarding to the attorneys for the income beneficiaries the sum of $5,000 as a fee and $582.55 for expenses, and directing the payment of these sums out of the principal of the trust. The amount of the fee itself does not appear to be seriously disputed. Under all of the circumstances here present, we see no reason for interfering with the exercise of discretion by the court below in directing the payment of these sums from the corpus of the trust.

The order, so far as appealed from, should be modified by directing that the stock dividends of the Standard Oil Company (New Jersey) distributed in 1948 and 1949 and the stock dividends of the Standard Oil Company of California distributed by it in 1949 and 1950 be allocated by the trustees to income and not to principal and, as so modified, the order should be affirmed, with costs to all parties appearing herein and filing briefs, payable out of the trust.

COHN, J. (dissenting in part). I concur in the result as to stock dividends declared by the Standard Oil Company of New Jersey, distributed in 1948 and 1949, and the stock dividends of the Standard Oil Company of California, distributed in 1949 and 1950. It doubtless was the intent of the settlor of this *inter vivos* trust (though inadequately expressed) to have allocated to the income beneficiary, such stock dividends payable out of current earnings of the two corporations in question. I am in accord with the determination reached by the majority in all respects save that I dissent insofar as it allows fees and disbursements to the attorneys for the income beneficiary payable out of the trust fund. There is no authority in law for such allowances in a proceeding brought in the Supreme Court under article 79 of the Civil Practice Act. (*Pratt* v. *Pratt,* 256 App. Div. 985; *Fell* v. *McCready,* 236 App. Div. 390, 401, affd. 263 N. Y. 602; *Matter of Loomis,* 273 N. Y. 76, 81.) The order appealed from should be further modified by striking therefrom the provision directing that the fees and disbursements of the attorneys for the objectants be charged against the principal of the trust, otherwise affirmed.

PECK, P. J., DORE and BERGAN, JJ., concur with SHIENTAG, J.; COHN, J., dissents in part, in opinion.

Order, so far as appealed from, modified in accordance with the opinion herein and, as so modified, affirmed, with costs to all parties appearing and filing briefs herein, payable out of the trust. Settle order on notice.