G. Robert Wither, J.
The Genesee Valley Union Trust Company, as trustee of an inter vivos trust established under agreement with Adele H. Clark, made on May 17, 1938, seeks construction of said agreement and approval of its final account thereunder. The trust was established upon the transfer to the trustee of 250 shares of common stock of Eastman Kodak Company. The trust agreement provided that the trustee should pay the net income to the grantor’s sister, Jennie H. MacMillan, for life, and upon her death to pay the principal to the respondent, now known as Rochester Institute of Technology. The life beneficiary died on October 2, 1960.
In paragraph seventh of the trust agreement the grantor provided in part as follows:
“(b) The following shall not be considered as income, but as an increment in the value of principal and added to the principal fund, viz.: (1) dividends paid in stock of the company declaring the same, except as stated below, (2) liquidating dividends * * #
*254 “(c) The following shall be treated as income: (1) all cash dividends, whether ordinary or extraordinary, except liquidating dividends; (2) dividends paid in stock of the company declaring the same, where such dividends are paid regularly by such company pursuant to a settled policy in lieu of, or accompanying regular cash dividends.”
In 1947 Eastman Kodak Company split its common stock five shares for one. The additional shares were allocated to principal by the trustee; and no claim is made herein that any of such new shares constituted income. (See Matter of Strong, 198 Misc. 7, affd. 277 App. Div. 1157, arising under a testamentary trust established before the enactment of section 17-a of the Personal Property Law.) In each of the years 1948, 1949, 1952, 1954 and 1956 a stock dividend of 5% was declared, and in the years 1950 and 1951 a stock dividend of 10% was declared. The trustee allocated such shares to principal. In 1959 Eastman Kodak Company made a 100% stock distribution.
Objectant, the executor of the will of the deceased life beneficiary, claims that each of the stock dividends for the years 1948 through 1956 should be allocated to income instead of principal, and that the 100% stock distribution made on such shares in 1959 should also be allocated to income. No claim is made that any part of the remainder of the 100% stock distribution of 1959 should be allocated to income. (In a trust created by this same grantor before the enactment of section 17-a of the Personal Property Law, said 1959 stock distribution was allocated to principal. [Matter of Clark, 25 Misc 2d 506].)
The trust agreement herein having been made after the enactment of section 17-a of the Personal Property Law, it is presumed that the grantor had in mind the provisions of said law, which include ‘ ‘ Unless otherwise provided in a will, deed or other instrument, * * * any dividend which shall be payable in the stock of the corporation or association declaring or authorizing such dividend * * * in respect of any stock of such corporation composing, in whole or in part, the principal of such trust, shall be principal and not income of such trust. ’ ’
Consonant with said statute, the grantor herein directed that dividends paid in stock of a company declaring the same should be allocated to principal except as provided in paragraph seventh, subdivision (c), of the trust agreement. Therein the grantor provided for allocation to income of “ (2) dividends paid in stock of the company declaring the same, where such dividends are paid regularly hy such company pursuanit to a settled policy in lieu of, or accompanying regular cash dividends.” (Emphasis added.) Thus the stock diyidends in ques *255 tion were properly allocated by the trustee to principal unless it must be held that the fair interpretation of the above-quoted provisions of the trust instrument leads to the conclusion that the grantor intended that stock dividends of the sort herein considered should be allocated to income.
Objectant has noted in particular that the source of the stock dividends was earnings of the company. In view of section 17-a of the Personal Property Law and paragraph seventh, subdivision (b), of the trust instrument above quoted, and also in view of principles discussed in Matter of Payne (Bingham) (7 N Y 2d 1) and Matter of Clark (25 Misc 2d 506, supra), it must be held that the source of the funds for the stock dividend is not a controlling factor. It is fundamental that corporate earnings, though amounting to corporate assets, are not the equivalent of dividends until declared such by the directors of the corporation. As said in Matter of Matthews (280 App. Div. 23, 26, affd. 305 N. Y. 605): “Our primary inquiry here, of course, is to ascertain the intention of the settlor, and in such inquiry it is important to determine the established legal significance of the words used.”
In the Matthews case the court had under consideration a trust provision that all stock dividends “ shall be deemed to be principal, except that regular stock dividends paid in lieu of or in conjunction with regular cash dividends, shall be deemed to be income ’ ’. The court held that the word ‘ ‘ regular ’ ’ as used by the grantor meant “ ordinary ”, that the fact that there were only two stock dividends paid by each of two corporations involved, did not prevent the application of said stock dividends to income, and that such stock dividends were within the scope of grantor’s exception from principal.
Many of the facts in the Matthews case (p. 26) are like those in the case at bar. An important factual difference is that in the Matthews case the total amount of the cash dividend .and stock dividend declared each year was substantially in the same amount as prior cash dividend declarations. In the trust in question, in the year of the stock dividend of November, 1948 Eastman Kodak Company also paid cash dividends of $1.65 per share, being 10 cents per share more than its all-time high of cash dividends paid the previous year, and in years of subsequent stock dividends Eastman Kodak Company also paid cash dividends in amounts greater than ever before, to wit, in 1949 and 1950 it paid $1.70 per share each year, in 1951 and 1952 it paid $1.80 per share each year, and in 1954 it paid $2 per share, and in 1956 it paid $2.65 per share. Thus, although the stock dividends came from earnings, the cash dividends paid by the *256 company continued as much as and more than those paid theretofore.
It is in the light of these facts that we must consider what was the grantor’s intention in paragraph seventh, subdivision (c)-(2), above. She has said that stock dividends shall be principal except where they are paid (1) regularly, (2) pursuant to a settled policy (3) in lieu of, or accompanying regular cash dividends.
In the first place (1) it seems clear that the grantor used said word “regularly” in its normal sense as opposed to “ ordinary ’’ as interpreted in the Matthews case {supra) because later in the clause she refers to “ regular cash dividends ”, which, under the interpretation of the Matthews case, may well mean “ ordinary cash dividends.” In no way can the word “ regularly ” as used here be construed to mean anything else. Clearly, the stock dividends were not regularly paid.
The grantor said “regularly” (2) “pursuant to a settled policy ’ ’. The minutes of the meetings of the board of directors of Eastman Kodak Company when these stock dividends were declared show that the matter of stock dividend was considered de novo on each occasion that one was declared. In 1948 the preamble to the resolutions authorizing the stock dividend mentioned “ the advisability of declaring a stock dividend on the common stock at this time.” (Emphasis added.) In 1949 such preamble repeated ‘ ‘ at this time ’ ’ and stated that the management “ had come to the conclusion that such action would be advisable for substantially the same reasons that the stock dividend was declared in 1948 ’ ’. In 1950 such preamble mentioned a “ further stock dividend ” and stated that the “ management had come to the conclusion that such a dividend should be declared at this time, and that the amount of it should be 10% of the stock held ”. (Emphasis added.) No mention was made of an established intention or policy, and the language used shows that each year was considered on its own earnings record. It may well be inferred that the directors had in the back of their collective minds the thought that the financial needs of the company presently and prospectively were such that earnings should be retained for use in the business, and that so far as reasonably possible without impairment of fair cash dividends, earnings should be capitalized by payment of stock dividends. But they did not resolve to pay a stock dividend in a stated percentage amount or under any circumstances or conditions henceforth. In five of the thirteen years from 1948 through 1960 they declared 5% stock dividends, in two of such years they declared 10% stock dividends, in one year *257 (1959) they declared a 100% stock distribution, and in five of such years they declared no stock dividend or stock distribution. If any policy were in the minds of the directors, it was at most to declare a stock dividend for some amount in those years in which the earnings justified it, consistent with the payment of reasonable cash dividends. At best the court could only speculate that such had become a settled policy. No announcement was made by the company in or after 1956 that its dividend policy was to be changed. Yet since the year 1956 such stock dividends have not been declared. This fact tends to confirm the conclusion that the company had established no settled stock dividend policy, and that it would be mere speculation to anticipate the action of the board of directors. A review of the history of the stock market with respect to Eastman Kodak Company stock shows that in the years after 1948 near the time for the consideration of the annual corporate dividend the market usually rose on hopes of a stock dividend, and in many years when such hopes did not materialize the market fell on the disappointing news. This action tends to show that the matter of stock dividends was one of hope and speculation and not of established policy.
It remains to consider (3) “ in lieu of, or accompanying regular cash dividends ”. It is common knowledge that many corporations have a policy of declaring stock dividends in lieu of or in diminution of cash dividends. Indeed some corporations have polled their stockholders to ascertain if they would like the directors to adopt such dividend policy. On the question of the grantor’s intention, it seems clear that she wanted to assure the continuance of the normal cash dividends for the benefit of the life beneficiary, having in mind the tendency of many corporations (arising largely out of government income tax policies) to reduce cash dividends and pay stock dividends in lieu of the reduced amount. The words ‘ ‘ or accompanying regular cash dividends ” must be read in context, and by implication the word “ reduced ” must be added before the word “ regular ”, the grantor’s thought obviously being “ in lieu of, or accompanying reduced regular cash dividends ”. Where the evidence shows that the cash dividends have steadily risen throughout the years, I do not believe that it can fairly be held that the grantor meant subdivision (c)-(2) of the paragraph seventh of the instrument in question to cut down the provision of subdivision (b)-(l) thereof.
It is familiar law that a gift in one paragraph (subd. [b]) will not be reduced by later provisions of another paragraph (subd. [c]) unless the later provisions clearly require such *258 reduction. From the foregoing analysis it appears that the stock dividends in question were not “ regularly ” paid, “ pursuant to a settled policy ”, “in lieu of, or accompanying regular cash dividends ”, as those terms must be interpreted. Upon the facts in this case, I interpret paragraph seventh as requiring the trustee to allocate the stock dividends in question to principal, as the trustee has done; and judgment may be entered dismissing the objection thereto and approving the account as filed.