**SUNRISE INDUSTRIAL JOINT VENTURE, Plaintiff,**

v.

**DITRIC OPTICS, INC., and Signal Technology Corp., Defendants.**

No. CV 94–3390 (ADS).

United States District Court, E.D. New York.

Jan. 16, 1995.

766

Rosen & Barnard (Avrum J. Rosen, of counsel), Huntington, NY, for plaintiff.

Schiffmacher, Cullen, Farrell & Limmer (John M. Farrell, Jr., of counsel), Great Neck, NY, for defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

In this diversity case, the defendants Signal Technology Corp. ("Signal") and Ditric Optics, Inc. ("Ditric") move pursuant to Fed. R.Civ.P. 12(c) for a judgment on the pleadings (1) dismissing the complaint as against the defendant Signal, and (2) dismissing the tenth cause of action in the complaint as against the defendant Ditric. The basis of the underlying controversy is the alleged breach by Ditric of a ten-year commercial lease between Sunrise and Ditric.

### BACKGROUND AND COMPLAINT

The plaintiff Sunrise Industrial Joint Venture ("Sunrise") is a New York general partnership. The defendant Ditric is a corporation organized under the laws of Massachusetts. Signal is a corporation organized under the laws of Delaware, with offices in Massachusetts. Until the time it ceased doing business, Ditric was a wholly owned subsidiary of Signal.

On March 15, 1988 Sunrise, as landlord, and Ditric, as tenant, entered into a ten-year commercial lease of a 17,000 square foot building located at 91–4 Colin Drive, Holbrook, New York. Commencement of the lease began on June 1, 1988 and expired on September 30, 1998. Under the terms of the lease, Ditric's use of the premises was limited to the manufacture, warehousing and distribution of optical equipment and offices incident to these activities. Rent for the premises was fixed at $93,621 a year for the first five years, and $110,643 a year for the remaining five years. The rent was payable in monthly installments at the beginning of the month, the first payment commencing on October 1, 1988.

Sunrise alleges that Ditric was current with rent payments through May 30, 1993, namely, for the first five years of the lease term, but that after that date it failed to pay any more rent. According to the plaintiff, Ditric was notified on July 12, 1993 of its default in accordance with the terms of the lease, and has failed to cure the default.

Sunrise also alleges that in April 1991, Ditric and/or Signal sold all or most of Di-

tric's assets without any notice to Sunrise, and thereafter conveyed all of the proceeds of the sale and any remaining assets to Signal for less than fair equivalent value. According to Sunrise, the conveyance of the sale proceeds and remaining assets to Signal left Ditric insolvent and unable to meet its obligations under the lease. Sunrise claims that the sale of Ditric's assets and the transfer of the sale proceeds to Signal was made with the intent to hinder and defraud Sunrise in its attempts to obtain payment under the Lease, and that the transaction constitutes a fraudulent conveyance under New York's Debtor–Creditor law.

As a result of the alleged default and sale of Ditric's assets, the plaintiff commenced the present lawsuit. The complaint alleges eleven causes of action against Ditric, of which the last six are also alleged against Signal. The first five causes of action are for various monetary damages allegedly provided to Sunrise by the lease terms in the event of a default by Ditric, including the amount of rent owed, the full amount of the fixed rent, the cost of re-letting the premises, costs and attorneys' fees, and interest calculated at 15% annually.

The sixth through ninth causes of action allege claims for fraudulent conveyance under New York Debtor–Creditor Law §§ 272–276a. The tenth cause of action states a claim for failure to comply with the bulk transfer provisions of Article 6 of the New York Uniform Commercial Code ("NYUCC"). Finally, the eleventh cause of action alleges that because Signal did not pay adequate consideration for the proceeds of the Ditric asset sale, Signal holds the proceeds of the sale and any other assets it received in constructive trust for Sunrise. The plaintiff seeks compensatory and punitive damages, costs and reasonable attorneys fees, reconveyance of Ditric's assets to Sunrise, and an accounting of the assets by Signal. A copy of the lease and other correspondence between the parties is attached to the complaint.

## PRESENT MOTION

The defendants move pursuant to Rule 12(c) for a judgment on the pleadings dismissing the complaint as against Signal, and dismissing the tenth cause of action against Ditric.

In order to clarify the allegations in the complaint, the defendants have submitted the affidavit of James J. Hickey, vice-president and treasurer of Signal. According to Hickey, Ditric sold its assets in April 1991 in two transactions. First, on April 16, 1991 it sold a substantial portion of its assets to Fairway Data Systems ("Fairway"), a California company, pursuant to an asset purchase agreement between the two companies. As part of this transaction Ditric assigned its lease with Sunrise to Fairway, and Fairway assumed Ditric's obligations under the lease. Second, on April 29, 1991 Ditric sold the remainder of its assets to the Carion Corporation ("Carion"), a Massachusetts corporation. This latter sale was pursuant to an asset purchase agreement between Ditric, Signal and Carion. Shortly after this transaction, Ditric's name was changed to ST Optics, Inc. Hickey further states that on January 2, 1992, ST Optics transferred the proceeds of these two sales in the form of a one-time dividend to Signal, its sole shareholder, in the amount of $1,041,048.

The defendants contend that the transactions involving the sale of Ditric's assets occurred some 27 months before the alleged default under the lease, and that the subsequent conveyance of the sale proceeds to Signal occurred some 18 months before the alleged default. Thus, the defendants argue that at the time of these transactions Sunrise could not have been a creditor of Ditric because all the rent payments were current, and therefore the sale of Ditric's assets and subsequent conveyance of the sale proceeds to Signal could not have defrauded Sunrise as a creditor nor have been in violation of the Bulk Transfers provisions of the NYUCC. As a result, the defendants contend the complaint must be dismissed as against Signal, and the cause of action under the NYUCC Bulk Transfers statute must also be dismissed against Ditric.

The defendants also contend that the complaint must be dismissed against Signal on the ground that the Court lacks personal jurisdiction over Signal. In his affidavit, the vice-president of Signal states that Signal is

incorporated in Delaware and its principal place of business is Weymouth, Massachusetts. According to Hickey, Signal has no offices, telephone numbers, agents or bank accounts in New York, does not transact any business in New York, has no sales in New York, and none of the allegations in the complaint involve activities conducted by Signal in New York.

On the other hand, the plaintiff contends that the definition of "creditor" under the New York Debtor–Creditor Law and the NYUCC Bulk Transfers statute includes persons who hold unmatured and contingent claims. According to Sunrise, at the time of the transactions at issue it held an unmatured and contingent claim against Ditric for the rent in the event of default, and therefore was a "creditor" within the meaning of the relevant statutes for the purposes of bringing the present action.

Sunrise also contends that the Court has personal jurisdiction over Signal because Signal generally does business in New York, and has conducted business in New York through it affiliate Ditric. Moreover, Sunrise contends that Signal is subject to New York's long-arm jurisdiction, because it has sufficient minimal contacts in the state with respect to the lease at issue. In support of its contentions favoring personal jurisdiction over Signal, Sunrise sites the following activities by Signal in New York: (1) Signal negotiated the lease at issue on behalf of Ditric; (2) when Signal wanted Ditric to be released from its lease obligations at the end of the first five year term, it sent two Signal officers, one of them being the Chief Financial Officer, to meet with Sunrise's managing agent in order to negotiate the release from the lease; (3) subsequent to the negotiations, Signal sent correspondence to Sunrise offering the terms of release from the lease; (4) contrary to Signal's assertion that it never transacted business in New York, Sunrise sites to a press release issued by Signal which states that Signal had acquired a major company located on Long Island; and (5) Signal and Ditric have interlocking directors and are virtually indistinguishable as companies.

## DISCUSSION

### Judgment on the Pleadings

■ Judgment on the pleadings is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988). In considering a motion for judgment on the pleadings, the court must accept as true all of the non-movant's well pleaded factual allegations, and draw all reasonable inferences therefrom in favor of the non-movant. *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994); *DeSantis v. United States*, 783 F.Supp. 165, 168 (S.D.N.Y.1992). Unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle the plaintiff to relief, the court can not grant a defendant's motion for judgment on the pleadings. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.) (when deciding a Rule 12(c) motion, the court applies the same standard as that applicable to a 12(b)(6) motion), *cert. denied,* — U.S. ——, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994); *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir.1977).

■ In its discretion and upon notice to the parties, a court may consider materials outside the pleadings. If it does so and notice is given to the parties, the motion for judgment on the pleadings is treated as one for summary judgment. *Gagliardi v. Village of Pawling*, 18 F.3d 188, 191 (2d Cir.1994); *Sellers*, 842 F.2d at 642.

### 1. Personal Jurisdiction Over Signal.

■ Where a Court is asked to rule on a combination of Rule 12 defenses, it will pass on the jurisdictional issues before considering whether a claim is stated in the complaint. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir.1963) (in banc); *Penguin v. Janklow*, 98 F.R.D. 763 (S.D.N.Y. 1983). If the Court relies on the pleading and affidavits alone when considering a motion to dismiss for lack of jurisdiction, as it does here, the plaintiff need only make a *prima facie* showing of jurisdiction in order to defeat the motion. In that event, the

pleading and affidavits are construed in the light most favorable to the plaintiff, and all doubts are resolved in his or her favor. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994); *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986); *En Vogue v. UK Optical Ltd.*, 843 F.Supp. 838, 842 (E.D.N.Y.1994). If the jurisdictional issue requires an evidentiary hearing, then the plaintiff must establish jurisdiction by a preponderance of evidence. *Robinson*, 21 F.3d at 507 n. 3; *CutCo*, 806 F.2d at 365.

■■■■ To determine whether a Court has personal jurisdiction over a defendant, it is necessary to examine the relevant statutes of the forum state. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). Under New York law, the Court must follow a two-step procedure in order to determine whether there is personal jurisdiction over a defendant: (1) the Court must determine whether New York Civil Practice Law and Rule ("CPLR") sections 301 or 302 provide a basis for personal jurisdiction, and (2) if they do, the Court must then conduct a constitutional inquiry to determine whether the exercise of personal jurisdiction over the defendant would offend due process pursuant to *International Shoe Company v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. *See A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 82 (2d Cir.1993).

Although the plaintiff contends that Signal is subject to personal jurisdiction under the general New York jurisdictional statute, CPLR § 301, because Signal allegedly "does business" in New York, in the Court's view it is not necessary to decide whether Signal is subject to personal jurisdiction under section 301. The affidavits and documents submitted by the parties indicate sufficient minimal contacts by Signal in New York with regard to the lease at issue to subject Signal to New York's long arm jurisdiction statute, CPLR § 302.

■■■■ Personal jurisdiction over Signal can be obtained in this case pursuant to CPLR § 302(a)(1) and § 302(a)(3)(ii). Section 302(a)(1) provides that New York courts may exercise personal jurisdiction over a non-do-miciliary who "transacts any business within the state." Under this provision of the long-arm statute, the defendant's minimal contacts with the state must be purposeful, and the cause of action must arise out of the contacts or transactions in the state. *See Staten Island Hospital v. Alliance Brokerage Corp.*, 166 A.D.2d 574, 560 N.Y.S.2d 859, 861 (2d Dept.1990) (citing *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 198–99, 522 N.E.2d 40, 42–43 (1988)).

Here, the plaintiff has alleged—and supported with documentation—that Signal negotiated the lease, sent two corporate officers to New York to negotiate Ditric's release from the lease, and sent correspondence to New York regarding the terms of release. Sunrise has also documented that part of Ditric's asset sale was conducted with the authorization of Signal, after Signal had attempted to negotiate a release of Ditric from the lease. All of these contacts were purposeful with respect to New York, they involve the lease at issue, and are substantially related to the underlying claims raised by the plaintiff. Accordingly, they suffice for purposes of asserting long-arm jurisdiction under section 302(a)(1). *Accord Manhattan Life Insurance Co. v. A.J. Stratton Syndicate*, 731 F.Supp. 587, 593 (S.D.N.Y.1990) (one meeting in New York and follow-up letters to that meeting qualify as transacting business under section 302(a)(1), if meeting had some substantial or critical relationship to the matters forming the basis of litigation).

■■■■ Section 302(a)(3)(ii) provides for personal jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state," if he or she regularly does or solicits business within the state, derives substantial revenue from goods used or consumed or services rendered in the state, or reasonably expects the act to have consequences in the state and derives substantial benefit from interstate or international commerce. A cause of action for fraudulent conveyance is a species of tort. *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 898–99 (2d Cir. 1980); *In re Morse Tool, Inc.*, 108 B.R. 384,

386–87 (Bankr.D.Mass.1989). Signal also derives substantial benefit from interstate commerce.

In this Court's view jurisdiction under section 302(a)(3)(ii) is appropriate, because Signal's actions regarding the sale of Ditric's assets and the subsequent transfer of the proceeds to Signal could reasonably have been expected to have had consequences in New York with respect to Sunrise's ability to recover the reserved rent, in the event of a default in rent payment by Ditric's assignee.

Finally, asserting long-arm jurisdiction over Signal pursuant to the provisions of CPLR § 302(a) also comports with the demands of due process under *International Shoe* and its progeny. By negotiating the lease and sending its officers into New York to negotiate a release from the lease, Signal "purposefully avail[ed] itself of the privilege of conducting activities in the forum state," and it can "reasonably anticipate being subject to suit" in New York on any claims regarding the lease. *See Melendez v. Professional Machine & Tool Company, Ltd.,* 190 A.D.2d 657, 593 N.Y.S.2d 258, 259 (2d Dept. 1993) (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

Accordingly, the plaintiff has made a *prima facie* showing of personal jurisdiction over Signal, and the Court can exercise personal jurisdiction over the defendant Signal.

## 2. Sunrise is a Creditor Within the Meaning of the Fraudulent Conveyance Statute.

Section 270 of the New York Debtor Creditor Law defines a creditor as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." That section also defines a debt as "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent."

The defendants contend that under New York law, a covenant to pay rent does not create a debtor-creditor relationship between a tenant and a landlord. In support of this proposition, the defendants rely on *In re Ryan's Estate,* 294 N.Y. 85, 95, 60 N.E.2d 817 (1945), and other cases relying on the authority of *Ryan's Estate.*

In *Ryan's Estate* the New York Court of Appeals considered whether a life beneficiary interest in a trust could be charged and taxed under the law of trusts, at the time of the beneficiary's death, for the remaining rent of a leased premises constituting the sole investment of the trust. Under the terms of the trust at issue, the beneficiary was the tenant under the lease and the trustees were the landlords. The Court of Appeals held that, where the beneficiary had paid the rent due during his lifetime, the beneficiary interest could not be charged for the remaining rent at the time of the beneficiary's death, because the remaining rent had not become due and was, therefore, not a liability or obligation of the beneficiary. In particular, the court held:

> The covenant to pay rent creates no debt until the time stipulated for the payment * * * It is not a case of a debt complete when contracted, but of which the performance cannot be required till some future period. On the contrary, *the obligation upon the rent is altogether contingent.*

*Ryan's Estate,* 294 N.Y. at 95, 60 N.E.2d 817 (emphasis supplied).

In the Court's view, the defendants' have misunderstood the definition of "creditor" and "debt" under the New York fraudulent conveyance statute, as well as the applicability of *Ryan's Estate* to those definitions. The defendants would have the Court rule that a person is not a creditor, or an obligation is not a debt, under the fraudulent conveyance statute until the claim of the creditor actually accrues; that is, until the debt becomes due and owing. That, however, is contrary to the definition of the terms creditor and debt in the statute. Those terms are defined to include *contingent* and *unmatured* claims or liabilities. *See, e.g., Studley v. Lefrak,* 66 A.D.2d 208, 412 N.Y.S.2d 901, 905 (2d Dept.) (holding that a creditor "has standing to maintain an action to set aside a fraudulent transfer, though his debt may not have been in existence at the time of the transfer."), *aff'd,* 48 N.Y.2d 954, 425 N.Y.S.2d 65, 401 N.E.2d 187 (1979). *See also* New York Debtor–Creditor Law § 279 (a creditor whose

claim has not matured may proceed to set aside the conveyance "against any person whom he could have proceeded had his claim matured.").

Indeed, *Ryan's Estate* undermines the defendants' contentions, because there the New York Court of Appeals held that rent was a "contingent obligation." *Id.*, 294 N.Y. at 95, 60 N.E.2d 817. Thus, although for the purposes of the law of trusts future rent may not be considered a "debt", for the purposes of the fraudulent conveyance statute it can be.

Moreover, the Court finds that the other cases relied upon by the defendants are inapposite. None of them deals with the issue of rent as a contingent debt or liability within the context of New York's fraudulent conveyance statute. In *Glassman v. Hyder*, 23 N.Y.2d 354, 296 N.Y.S.2d 783, 786, 244 N.E.2d 259, 260–61 (1968), the New York Court of Appeals refused to hold that future rents could be attached as a "debt" for the purposes of *quasi in rem* jurisdiction over a foreign defendant. In *Barbro Realty Co., v. Newburger*, 53 A.D.2d 34, 385 N.Y.S.2d 68, 70 (1st Dept.1976), the appellate division held that the obligation to pay rent was not a pre-existing debt for purposes of excusing incoming partners, under New York partnership law, from personal liability on the partnership's continuing debt obligations. Neither of these cases deals with the more expansive definition given to the terms "creditor" and "debt" under the New York fraudulent conveyance statute.

Accordingly, the Court finds that the plaintiff has stated a cause of action against Signal to set aside a fraudulent conveyance under section 272 of the New York Debtor Creditor Law.

■ Signal also contends that Sunrise's causes of action under sections 275 and 276 of the Debtor Creditor law must fail, because the plaintiff has not pleaded any allegations showing actual fraud or an intent to defraud the plaintiff. According to the defendants, the allegations are merely conclusory. The Court disagrees.

■ With respect to the seventh and eighth causes of action under section 275 and 276 of the Debtor Creditor law, the Court preliminarily notes that allegations of a fraudulent conveyance must also be pleaded with the particularity required by Rule 9(b). *See Starmark, Inc. v. Zaccaria*, 1992 WL 209288 at *2, 1992 U.S.Dist. LEXIS 12309 at *5 (S.D.N.Y. Aug. 17, 1992); *Barclays Bank of New York v. Goldman*, 517 F.Supp. 403, 416 (S.D.N.Y.1981). However, the requirement of pleading fraud with particularity is relaxed where the particulars of the fraud claims are peculiarly within the knowledge of the defendants. *See Divittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987); *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Starmark*, 1992 WL 209288 at *2, 1992 U.S.Dist. LEXIS 12309 at *5. Indeed, the particularity requirement of Rule 9(b) is appropriately relaxed where the individual defendant is a corporate insider. *See, e.g., Pellman v. Cinerama, Inc.*, 503 F.Supp. 107, 111 (S.D.N.Y. 1980). Here, Signal was a corporate insider with respect to Ditric; it was the sole shareholder, and it came to New York to negotiate a release of the lease on Ditric's behalf.

■ To satisfy Rule 9(b) in situations where the particulars of the fraud claims are peculiarly within the knowledge of the defendants, the plaintiff's allegations must be accompanied by a statement of the facts upon which the belief is founded. *Luce v. Edelstein*, 802 F.2d 49, 54 n. 1 (2d Cir.1986). Sunrise's pleadings contain such a statement of facts regarding its fraudulent conveyance claims.

Although the complaint fails to plead the fraudulent conveyance claims with the particularity required by Rule 9(b), it is the Court's view that the defendants' motion must be denied because the particular facts surrounding the transactions are within the knowledge of the defendants. *See Starmark*, 1992 WL 209288 at *2, 1992 U.S.Dist. LEXIS 12309 at *5. Moreover, the Court believes the plaintiff has alleged enough facts to put Signal on notice that the transactions involving the sale of Ditric's assets and the subsequent conveyance of the proceeds to Signal in the form of a $1 million dividend are being challenged as fraudulent.

Accordingly, the plaintiff has properly pleaded causes of action against Signal to set aside a fraudulent conveyance under sections 275, 276 and 276–a of the New York Debtor–Creditor law.

### 3. Sunrise is Not a Creditor Within the Meaning of the Bulk Transfers Act.

The plaintiff contends that in selling all of Ditric's assets, the defendants failed to comply with the provisions of Article 6 of the NYUCC ("Article 6"), otherwise known as the New York Bulk Transfers Act. Article 6 provides, among other things, that before a bulk transfer is executed the creditors of the transferor must be given notice of the transfer or sale. *See* NYUCC § 6–105, § 6–107. Section 6–104 of the NYUCC provides in part that a bulk transfer is ineffective unless the transferee is supplied with a list of creditors. Failure to give such notice makes the bulk transfer ineffective.

Signal contends that Sunrise cannot raise a claim under Article 6, because Sunrise was not a creditor of Ditric at the time of the sale of Ditric's assets since Ditric had not defaulted on any rent payment. According to Signal, under New York law Article 6 does not apply to those who become creditors after the transfer. To support its contentions, Signal relies on *Apex Leasing Co. Inc. v. Litke*, 225 N.Y. 625, 121 N.E. 853 (1918), and cases decided on its authority. In *Apex Leasing* the New York Court of Appeals held that a landlord was not a creditor under the Bulk Sales Act where the tenant had not defaulted in paying rent until after the tenant had transferred all of its assets.

On the other hand the plaintiff contends that the defendants are making the same mistake they made with regard to the meaning of a creditor under the fraudulent conveyance statute. Sunrise claims that the defendants are misconstruing the definition of a creditor under Article 6 by relying on cases which construed the term "creditor" under the more narrow definition given to that term by the predecessor to Article 6, namely section 44 of the New York Personal Property law, otherwise known as the Bulk Sales Act (repealed effective in 1964). The plaintiff argues that the present definition of creditor as used in Article 6 is more expansive of the prior definition, and includes contingent and unliquidated claims.

Under the former statute, section 44 of the New York Property Law, the term creditor was narrowly defined as one who holds a claim that was fixed, certain and liquidated. *See, e.g., Apex Leasing Co. v. Litke,* 173 A.D. 323, 159 N.Y.S. 707 (1st Dept.1916), *aff'd* 225 N.Y. 625, 121 N.E. 853 (1918); *Credit Department Inc. v. Graham Furniture & Appliances Inc.,* 234 N.Y.S.2d 119, 121 (Sup.Ct. Kings County 1962) (citing cases); *Copease Manufacturing Co. v. Cormac Photocopy Corp.,* 242 F.Supp. 993, 1015 (S.D.N.Y.1965) ("In order for a creditor to come within the protection of the [Bulk Sales] Act, he must be the owner of a debt which must be fixed and capable of being definitely ascertained as an existing obligation liquidated in amount. Contingent liabilities are not within the protection of the Act.").

However, this narrow definition of the term creditor under the old statute was changed by the enactment of Article 6 to encompass a broader definition of creditor. Section 6–109 provides as follows:

### § 6–109. What Creditors Protected.

The creditors of the transferor mentioned in this Article are those holding claims based on transactions or events occurring before the bulk transfer, but creditors who become such after notice to creditors is given (Sections 6–105 and 6–107) are not entitled to notice.

According to the New York Annotations following this section:

To the extent that this section defines the creditors who are protected as those existing at the time of the bulk transfer, it is declaratory of the New York law. But to the extent ... that the word "claims" is broad enough to include "claims whether they are in tort or contract, are liquidated or unliquidated, are secured or unsecured, are contingent or fixed, are presently due or not," this section changes the law.

The issue for this Court to decide is the breadth of claims encompassed by the statute for the purposes of determining whether a person is a creditor under the

statute. Specifically, the Court must decide whether claims that are contingent, namely claims that are dependent on a future event that may never occur, are encompassed by Article 6. Because this is a diversity case, the Court must decide the issue as would the New York State Court of Appeals, or if that Court has not addressed the issue, as New York State courts would. *Travelers Insurance Co. v. 633 Third Associates*, 14 F.3d 114, 119 (2d Cir.1994).

The issue of what types of claims are encompassed by Article 6 for the purpose of determining whether the claim holder is a creditor of the transferor was addressed by the court in *Chemical Bank v. Society Brand Industries, Inc.*, 624 F.Supp. 979 (S.D.N.Y. 1985). In that case the plaintiff Chemical Bank brought an action under Article 6 against the transferee of collateral that the plaintiff had secured. Chemical had not been given notice of the transfer. At the time of the transfer, Chemical had asserted a claim against the transferor for conversion. The court rejected arguments by the defendants that Chemical was not a creditor because its claim was not fixed and certain, and held that Chemical's claim was the type of disputed and unliquidated claim encompassed by the meaning of creditor in Article 6. *See id.*, 624 F.Supp. at 981.

In so holding, the court in *Society Brand* recognized the legislative intent to give a "broader" definition to the term creditor under Article 6, so that holders of disputed and unliquidated claims are included within the meaning of the term creditor. *Id.* at 981.

This expansive construction of the term "creditor" under Article 6 is further supported by the definition of the term "creditor" set forth in section 1–201(12) of the NYUCC. The NYUCC defines creditor to include "a general creditor, a secured creditor, a lien creditor and any representative of creditors, including an assignee for the benefit of creditors, a trustee in bankruptcy, a receiver in equity and an executor or administrator of an insolvent debtor's or assignor's estate."

The only other decision addressing this issue under New York law is *Sado v. Sado*, 4 U.C.C. Reporter 213, 1967 WL 8826 (Sup.Ct.

New York County 1967). There, the court recognized the broader meaning given to the term creditor under Article 6, and allowed a creditor to challenge the transfer of a company's assets despite the creditor's claim being disputed and unliquidated. Like the plaintiff in *Society Brand*, the plaintiff in *Sado* had asserted a claim in tort against the transferor at the time of the transfer.

However, in the Court's view *Society Brand* and *Sado* are not dispositive of the present controversy. In these cases, the respective plaintiff-creditors had asserted claims against the transferor at the time of the bulk transfer, and, therefore, the transferee had reason to know that the plaintiffs should have been listed as creditors and given notice of the transfer pursuant to section 6–104. The claims in these two cases were disputed and unliquidated, that is, uncertain in amount, at the time of the transfer. They were not contingent claims, as is the plaintiff's claim in the present case. The Court believes that this fact distinguishes these cases and makes them inapposite to the present situation.

The Court has found only one case holding that a contingent claim is within the scope of UCC § 6–109, so that its holder is a creditor for the purposes of UCC article 6. *See Stone's Pharmacy v. Pharmacy Accounting Management, Inc.*, 812 F.2d 1063 (8th Cir. 1987). In that case, decided under the Texas Bulk Transfers Act—which is similar to the provisions of NYUCC Article 6—, the plaintiff entered into a maintenance agreement with the defendant regarding computer hardware and software it had brought from the defendant. One month after executing the sale and agreement, the defendant sold a substantial portion of its assets and inventory to another company and used the proceeds to partially satisfy a security interest in its inventory held by a bank. After the sale, the plaintiff sought to have the defendant honor the maintenance agreement, but the defendant refused. The plaintiff alleged that the asset sale left the defendant unable to perform under the maintenance agreement, and that the defendant and its transferee should have given notice of the sale to the plaintiff as required by UCC article 6. The defen-

dant contended that the plaintiff could not raise a claim under UCC article 6, because it was not a creditor within the meaning of UCC § 6–109. The district court agreed, and held that article 6 of the UCC was inapplicable.

The Court of Appeals for the Eighth Circuit reversed the district court on this issue. Despite the fact that at the time of the asset sale the plaintiff held a potential, contingent claim for a breach of contract in the future, the Eighth Circuit held that the plaintiff's claim was unliquidated and within the scope of the definition of creditor under article 6 of the UCC. *See Stone's Pharmacy,* 812 F.2d at 1065.

In the Court's view *Stone's Pharmacy* is not persuasive, because the decision apparently confuses the issue by treating the plaintiff's contingent claim in that case as an unliquidated claim. This Court believes that New York courts would not construe the definition of creditor in NYUCC § 6–109 as broadly as the Eighth Circuit did in *Stone's Pharmacy* to encompass claims that are not yet due and are contingent, such as a landlord's claim for future rent not yet due. Rather, the Court believes that New York courts would construe the definition of creditor under NYUCC § 6–109 to include only disputed and unliquidated claims already existing, as determined by the courts in *Society Brand* and *Sado.*

Such an interpretation of the definition of creditor would comport with the language of both section 6–109, which covers creditors "holding" claims, and section 1–201(12), the general NYUCC definition of creditor, which defines the term to include creditors holding already existing claims, *e.g.,* a general creditor, a secured creditor, a lien creditor, a trustee in bankruptcy, and a receiver in equity. Moreover, such an interpretation of the definition of creditor would comport with the policy underlying the enactment of UCC article 6. According to the official comment following UCC article 6–101, the "central purpose" of article 6 is to prevent the fraud inflicted by a bulk sales where the merchant, owing debts, sells out his or her stock in trade to anyone for any price, pockets the proceeds, and disappears leaving his or her creditors unpaid. According to the comment,

> [a]dvance notice to the sellers creditors of the impending sale is an important protection against it, since with notice the creditors can take steps to impound the proceeds if they think it is necessary.

NYUCC § 6–101, Official Comment note 4.

In the present case this central purpose of Article 6 is not implicated, because at the time of the sale of Ditric's assets Sunrise could not have done anything to the proceeds of the sale in order to protect itself, since there was no debt with regard to the rent existing at the time, and it did not otherwise have a security interest against Ditric's assets. Simply put, notice to Sunrise of the sale of Ditric's assets in April 1991 would have been ineffectual with regard to Sunrise's interest in the lease payments.

Accordingly, this Court holds that Sunrise was not a creditor of Ditric within the meaning of NYUCC § 6–109, and therefore it can not bring an action under Article 6 of the NYUCC against the defendants. The defendants' motion to dismiss the tenth cause of action is granted.

For the reasons stated above, it is hereby

**ORDERED,** that the defendants' motion pursuant to Fed.R.Civ.P. 12(c) for a judgment on the pleadings dismissing the complaint as against the defendant Signal is denied; it is further

**ORDERED,** that the defendants' motion pursuant to Fed.R.Civ.P. 12(c) for a judgment on the pleadings dismissing the tenth cause of action in the complaint as against both defendants is granted; and it is further

**ORDERED,** that the tenth cause of action in the complaint under the New York Bulk Transfers Act is dismissed as a matter of law.

**SO ORDERED.**