OPINION OF THE COURT
Franklin R. Weissberg, J.
Motion sequence numbers 001 and 002 are consolidated herein for decision.
Background
This is a forfeiture action brought pursuant to CPLR article 13-A to recover property which allegedly constitutes the proceeds or substituted proceeds of a crime, committed by Stuart Winkler. Mr. Winkler was the vice-president of a New York-based securities firm named A.S. Goldmen & Co., Inc. Iii July 1999, Winkler and 16 other individuals, along with A.S. Gold-men, were indicted in New York County for enterprise corruption (Penal Law art 460). The indictment charges that the defendants defrauded hundreds of investors by manipulating the price of securities and misrepresenting the anticipated performance of the securities they were selling. At or about the *839 time of the indictment, the Manhattan District Attorney’s Office, the plaintiff herein, commenced an article 13-A forfeiture action against the 18 criminal defendants and, in doing so, applied for and obtained a temporary restraining order against the assets of all of them, including Mr. Winkler. In October 1999 the court (Harold Tompkins, J.) granted the District Attorney’s underlying motion for a preliminary injunction restraining the use of the criminal defendants’ assets. The action has been automatically stayed pursuant to CPLR 1311 (1) (b) until disposition of the underlying criminal case.
The present forfeiture action has been brought against two New Jersey companies, A.J. Travis Ltd. and Sun Partners L. L. C., and against Mr. Winkler’s wife, June Guerrero, both in her individual capacity and as the mother and natural guardian of the couple’s three children, Andrew, Justine and Travis. The complaint alleges that a substantial portion of the proceeds which Mr. Winkler obtained through his criminal acts were fraudulently transferred to the defendants for the purpose of eluding any subsequent legal attempts by the plaintiff or others to recover the monies directly from him. According to the complaint, the defendants’ assets are comprised almost entirely, if not entirely, of the proceeds and substituted proceeds of Mr. Winkler’s alleged criminal activities with A.S. Goldmen.
In motion sequence number 001, the plaintiff seeks a preliminary injunction prohibiting the defendants from transferring or otherwise disposing of any of their real or personal property during the pendency of this action. A temporary restraining order was issued at the time that the order to show cause initiating the motion was brought. In motion sequence number 002, the plaintiff has moved pursuant to CPLR 1317 for an order confirming an ex parte order of attachment which the court (William J. Davis, J.) issued on February 14, 2000 against all of the defendants’ personal and real property.
Discussion
Under CPLR 1312 (3), an order of attachment is properly issued if (1) there is a substantial probability that the claiming authority will prevail on the issue of forfeiture, (2) failure to enter the order may result in the property being unavailable for forfeiture, and (3) the need to preserve the availability of the property outweighs the hardship on any party against whom the order may operate. The same criteria apply to an application for a preliminary injunction. (See, Morgenthau v Citisource, Inc., 68 NY2d 211, 222 [1986].)
*840 1. Plaintiffs Likelihood of Prevailing on the Issue of Forfeiture
To prevail on the issue of forfeiture, the plaintiff must (1) obtain a felony conviction against Mr. Winkler, (2) prove by a preponderance of the evidence that the property which is the subject of this action constitutes the proceeds or substituted proceeds of Mr. Winkler’s criminal acts, and (3) prove by a preponderance of the evidence that, inter alia, the defendants knew or should have known that the proceeds were obtained through the commission of a crime or that they fraudulently obtained their interest in the proceeds as part of a scheme to avoid forfeiture. (See, CPLR 1311 [3] [b].)
a. Felony Conviction
As to the likelihood that the District Attorney’s Office will obtain a felony conviction against Mr. Winkler, it should be noted that Justice Tompkins, in issuing a preliminary injunction against the 18 criminal defendants, concluded that the plaintiff had presented sufficient facts to establish that all of the defendants, including Mr. Winkler, would likely be convicted of a felony. The court herein agrees with this conclusion.
b. Proceeds or Substituted Proceeds
In support of his contention that the defendants’ property constitutes the proceeds or substituted proceeds of Mr. Winkler’s criminal acts with A.S. Goldmen, the plaintiff has submitted an affidavit from Assistant District Attorney Paul J. Mahoney which sets forth information he has obtained from the plaintiffs investigatory files. Mr. Mahoney asserts that these files show that (1) neither Ms. Guerrero nor her three children have any independent source of income, (2) A.J. Travis is a Delaware corporation formed in July 1997 with Ms. Guerrero as president and the three Winkler children as shareholders, whose only activity appears to be receiving money earned by Mr. Winkler and either transferring the money to accounts maintained by or on behalf of Ms. Guerrero and her children or paying the Winkler family’s personal expenses, and (3) Sun Partners L. L. C. is a New Jersey company whose only activity appears to be receiving, holding and transferring money between Winkler-related persons. According to Mr. Mahoney, since the inception of the A.S. Goldmen criminal enterprise in 1992, Mr. Winkler has systematically transferred his assets, including his income from A.S. Gold-men, into accounts maintained in the name of one or more of *841 the six defendants herein. Mr. Mahoney has indicated that a substantial portion of these transfers was made after Mr. Winkler became aware that his activities at A.S. Goldmen were under investigation. He reports that, following the preliminary injunction issued by Justice Tompkins, only $48,000 in funds in Mr. Winkler’s name have been located and restrained whereas approximately $5 million in additional cash and securities derived from his earnings have been identified in the defendants’ accounts.
In opposition to the plaintiffs application, Ms. Guerrero has submitted an affidavit which fails to dispute the bulk of Mr. Mahoney’s assertions. Although she suggests that she earned money prior to her marriage to Mr. Winkler, she does not identify any property which she currently owns which is attributable to these earnings. The affidavit does not even mention Sun Partners. As to A.J. Travis, Ms. Guerrero asserts that the company is actively involved in various investment activities and points out that it has earned substantial profits through these investments. The problem is that Ms. Guerrero does not deny that the company, which was formed in July 1997, was initially capitalized exclusively from her husband’s assets. Under article 13-A, any profits which the company may have thereafter made by its investment of Mr. Winkler’s tainted funds would constitute “substituted proceeds” which are subject to forfeiture. (See, CPLR 1310 [3].) As to the funds maintained by or on behalf of the three children, Ms. Guerrero has submitted documents showing that although three Fidelity accounts were opened in August 1998 with balances of approximately $1 million each, these accounts mostly consisted of monies which were transferred from three prior Dreyfus accounts maintained in the children’s names. Although Ms. Guerrero has submitted Dreyfus statements showing that the accounts had between $500,000 and $660,000 in 1994, she has failed to show how much was in these accounts prior to 1992, the time Mr. Winkler’s alleged criminal activities began. She has also failed to explain the additional half million dollars by which each of the accounts has since grown.
Ms. Guerrero also asserts that the house which she shares with her husband in New Jersey was purchased in 1991 and is in her name. However, she fails to state whether the house was in her name at the time of the purchase and whether it was paid for in cash or was financed. If it was financed, the payment of any mortgage after the inception of the A.S. Gold-men criminal enterprise in 1992 would have come from Mr. *842 Winkler. In the absence of any showing by Ms. Guerrero to the contrary, the court will presume that the house was, at least in part, financed and, as such, constitutes substituted proceeds of the alleged criminal enterprise.
Thus, on the record before the court, it appears likely that the plaintiff will prove by a preponderance of the evidence that the property which is the subject of this action constitutes the proceeds or substituted proceeds of Mr. Winkler’s criminal acts.
c. Defendants’ Participation or Knowledge of Scheme
As noted previously, the plaintiff has located only $48,000 in funds in Mr. Winkler’s name but has identified approximately $5 million in additional cash and securities derived from his earnings which are owned or maintained by the defendants. In cases involving an allegation that a conveyance of property was made with the intent to hinder, delay or defraud current or prospective creditors, the pleader is allowed to rely on what are referred to as “badges of fraud” because of the difficulty of proving such intent. (See, Wall St. Assocs. v Brodsky, 257 AD2d 526, 529 [1st Dept 1999].) Badges of fraud are circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent. (Supra, at 529.) These circumstances include a close relationship between the parties to the alleged fraudulent transaction, inadequacy of consideration and retention of control of the property by the transferor after the conveyance. (Supra.) Intrafamily transfers made without any signs of tangible consideration are considered to be presumptively fraudulent. (See, United States v Alfano, 34 F Supp 2d 827, 845 [ED NY 1999]; see also, AMEV Capital Corp. v Kirk, 180 AD2d 775, 776 [2d Dept 1992].)
Here, there is no suggestion by the defendants that the intrafamily transfers or the transfers to A.J. Travis and Sun Partners were made for any consideration, much less fair consideration. Moreover, the plaintiff has submitted evidence indicating that it is Mr. Winkler, not Ms. Guerrero, who controls A.J. Travis. In view of these circumstances, as well as the fact that almost all of Mr. Winkler’s assets were diverted to other accounts during a time when he was engaged in an allegedly criminal enterprise which ultimately led to his investigation and indictment, it is likely that the plaintiff will establish that Mr. Winkler attempted to avoid maintaining accounts and property which may be directly attached by a claim *843 ing authority or judgment creditor and that the defendants knowingly participated in this scheme.
d. Personal Jurisdiction
The defendants also argue that the court lacks personal jurisdiction over them and that it is therefore unlikely that the plaintiff will succeed on the forfeiture claim herein. They point out that A.J. Travis is a Delaware corporation with New Jersey headquarters, that Sun Partners is a limited liability company formed and headquartered in New Jersey, and that Ms. Guerrero and her children are all New Jersey residents. According to the defendants, none of them maintain a banking or other account in New York and do not otherwise transact any business in this State. They therefore argue that in the absence of any contacts with the State, the plaintiff has failed to acquire in personam jurisdiction over them. The court disagrees.
Under New York’s long-arm statute, a court may exercise personal jurisdiction over a nondomiciliary who in person or through an agent commits a tortious act within the State. (See, CPLR 302 [a] [2].) A cause of action for fraudulent conveyance is a species of tort. (See, Sunrise Indus. Joint Venture v Ditric Optics, 873 F Supp 765, 770-771 [ED NY 1995].) The plaintiff alleges that most of the proceeds of Mr. Winkler’s alleged criminal enterprise were earned in New York, deposited in his New York banking accounts and then fraudulently conveyed to the defendants. Since New York was therefore intimately involved in the conveyance, the alleged tort may be said to have been committed in this State. (See, Catauro v Goldome Bank for Sav., 189 AD2d 747 [2d Dept 1993] [in personam jurisdiction acquired through improper transfer of funds from New York bank to Missouri bank].) Moreover, for jurisdiction to be so acquired, it is not necessary that the defendant be physically present in the State. (See, Banco Nacional Ultramarino v Chan, 169 Misc 2d 182, 188-189 [Sup Ct, NY County 1996], affd 240 AD2d 253 [1st Dept 1997].) As the court in Banco Nacional stated, “It would be a travesty to permit the use of our institutions to channel stolen funds * * * by those who impudently claim they are beyond our borders! It would be a gross violation of common sense and reality to shelter such activities.” (Supra, at 188-189.) As coparticipants in a tortious act committed in New York State, the defendants are properly subject to the State’s long-arm jurisdiction.
*844 2. Need to Preserve Availability of the Property
In view of this court’s conclusion that the plaintiff is likely to establish that Mr. Winkler and the defendants have been engaged in a scheme to defraud prospective creditors and claiming authorities of monies which he owes and that Mr. Winkler exercises control over the defendants’ assets, there is a distinct possibility that these assets may be spent or otherwise made unavailable. Indeed, the District Attorney has pointed out that the Winkler family went on a $72,000 trip to the Grand Cayman Islands last December and chartered a private plane at a cost of $76,000 for a trip to the Bahamas this spring. The monies for these trips came from accounts maintained by Ms. Guerrero and A.J. Travis and are thus no longer available to pay an order of forfeiture which may be entered herein. An order of attachment and a preliminary injunction will prevent any further such expenditures of these assets.
3. Balance of the Equities
The record before the court establishes that the balance of the equities tips decidedly in favor of the plaintiff. The hardship, if any, which the defendants may have as a result of the issuance of a prehminary injunction and order of attachment is relatively minor. As the plaintiff points out, the District Attorney’s Office has agreed to a procedure whereby Ms. Guerrero and her children are entitled to, and have already received, a release of funds for reasonable living expenses and attorney’s fees. In addition, the frozen funds continue to be maintained in the same accounts which she maintained for herself and her children and which she therefore found to be satisfactory. Finally, if adjustments in these accounts need to be made or if the defendants need additional monies, the defendants may apply to the District Attorney’s Office for such relief. Apparently, they have already done so on at least one occasion. Whatever hardship the defendants may have as a result of this arrangement is far outweighed by the possibility that the assets in question may become unavailable in the absence of the requested relief.
Accordingly, the plaintiff’s motion for a preliminary injunction and for an order confirming the ex parte attachment of the affected property is granted.
*845 The parties shall settle judgment. In the interim, the temporary restraining order and order of attachment remain in effect.